**IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF PENNSYLVANIA**

DIANE JOHNSON, ON BEHALF OF HERSELF
AND OTHERS SIMILARLY SITUATED,

          *Plaintiff,*

    v.

MATTRESS WAREHOUSE, INC.,

          *Defendant.*

CIVIL ACTION NO. 20-891

**DEFENDANT MATTRESS WAREHOUSE, INC.'S BRIEF IN SUPPORT OF ITS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Dated: October 26, 2020

By: */s/ Henry A. Platt*
Henry A. Platt, Esq. (*Admitted Pro Hac Vice*)

**SAUL EWING ARNSTEIN & LEHR LLP**
Henry A. Platt, Esq.
1919 Pennsylvania Ave., N.W., Suite 550
Washington, D.C. 20006
T: (202) 342-3447
Henry.Platt@saul.com

Jessica L. Meller, Esq.
1500 Market Street, Centre Sq. W., Fl. 38
Philadelphia, PA 19102
T: (215) 972-7104
Jessica.Meller@saul.com

*Attorneys for Defendant Mattress Warehouse,
Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INDEX OF SUPPORTING EXHIBITS.......................................................................... iv

I.   INTRODUCTION.................................................................................................... 1

II.  STATEMENT OF FACTS ...................................................................................... 2

III. ARGUMENT ............................................................................................................ 6

    A.   Summary judgment standards. ................................................................. 6

    B.   The undisputed material facts show that Plaintiff met the overtime exemption to the FLSA and PMWA for commissioned retail sales employees under 29 U.S.C. § 207(i) of the FLSA and 34 Pa. Code § 231.43(f) of the PMWA, and was not entitled to overtime pay............................ 7

        1.   Plaintiff concedes that she was an employee at a retail establishment, and there are no material facts to the contrary. ................. 10

        2.   Plaintiff concedes that her regular rate of pay always exceeded one and one-half times the applicable minimum wage for every hour she worked, and there are no material facts to the contrary. ........................... 11

        3.   The undisputed material facts show that more than 50% of Plaintiff's compensation in a representative period of one year was from commissions on the sale of goods. ................................................... 11

            a.   Mattress Warehouse uses a one year representative period. ......... 12

            b.   The undisputed material facts show that the commission plan under which Mattress Warehouse paid Plaintiff is a bona fide commission plan within the meaning of the FLSA and PMWA. ................................................................................................. 15

            c.   More than 50% of Plaintiff's compensation in a one-year representative period was from commissions on the sales of goods. ....................................................................................................... 19

                i.   Rolling annual basis ......................................................... 19

                ii.  Calendar basis for 2018 and 2019.................................... 20

IV.  CONCLUSION ....................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..................................................................................................7

*Crawford v. Saks & Co.*,
  No. CV H-14-3665, 2016 WL 3090781 (S.D. Tex. June 2, 2016)....................................16, 18

*Encino Motorcars, LLC v. Navarro*,
  – U.S. –, 138 S. Ct. 1134 (2018).............................................................9, 10, 16, 18

*Gordon v. TBC Retail Grp., Inc.*,
  No. 2:14-CV-3365-DCN, 2020 WL 3259394 (D.S.C. June 16, 2020)............................10, 16

*Johnson v. Mattress Warehouse, Inc.*,
  No. CV 20-891, 2020 WL 2839109 (E.D. Pa. June 1, 2020) ...................................12

*Kauchner v. Cnty. of Bucks*,
  455 F.3d 418 (3d Cir. 2006)......................................................................................6

*Livi v. Hyatt Hotels Corp.*,
  751 F. App'x 208 (3d Cir. 2018) ..............................................................................8

*McAninch v. Monro Muffler Brake Inc.*,
  799 F. Supp. 2d 807 (S.D. Ohio 2011) ....................................................................16

*Parker v. NutriSystem, Inc.*
  620 F.3d 274 (3d Cir. 2010) ..........................................................................15, 16, 17

*Schaar v. Lehigh Valley Health Servs., Inc.*,
  732 F. Supp. 2d 490 (E.D. Pa. 2010) .......................................................................6

*Schooch v. First Fidelity Bancorporation*,
  912 F.2d 654 (3d Cir. 1990).....................................................................................7

*Secretary of Labor v. Bristol Excavating, Inc.*,
  935 F.3d 122 (3d Cir. 2019).................................................................................9, 17

*Shaw v. Temple Univ.*,
  357 F. Supp. 3d 461 (E.D. Pa. 2019) ...................................................................6, 7

## STATUTES

43 P.S. § 333.104 ............................................................................................... *passim*

29 U.S.C. § 206(a)(1)(C) ...........................................................................................11

29 U.S.C. § 207 ........................................................................................................ *passim*

## OTHER AUTHORITIES

29 C.F.R. § 779.318 ...............................................................................................10

29 C.F.R. § 779.411 ...............................................................................................10

29 C.F.R. § 779.414 .................................................................................................9

29 C.F.R. § 779.416 ..........................................................................................12, 16

29 C.F.R. § 779.417 ...............................................................................................13

34 Pa. Code § 231.43(f) ....................................................................................... *passim*

34 Pa. Code § 231.101(a)(4) ................................................................................11

A. Scalia & B. Garner, *Reading Law* 363 (2012) ....................................................9

Fed. R. Civ. P. 56 .................................................................................................. *passim*

## <u>INDEX OF SUPPORTING EXHIBITS</u>

1. **Exhibit A –** Defendant's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment

2. **Exhibit B** – Declaration Of Henry A. Platt, Esquire In Support Of Defendant's Motion For Summary Judgment

   - Exhibit 1 – Deposition Excerpts of Plaintiff, Diane Johnson

   - Exhibit 2 - Deposition Excerpts of Peter Varcos

   - Exhibit 3 - Deposition Excerpts of Vasilis "Bill" Papettas

   - Exhibit 4 - Deposition Excerpts of Gina Ramos

   - Exhibit 5 - Deposition Excerpts of Sandra Jean Olson

3. **Exhibit C** – Declaration of Vasilis "Bill" Papettas In Support Of Defendant's Motion For Summary Judgment

4. **Exhibit D** – Declaration of Peter Varcos In Support Of Defendant's Motion For Summary Judgment

   - Exhibit A – Employment Application – Mattress Warehouse 000097-100

   - Exhibit B – Offer Letter – Mattress Warehouse 0000107-109

5. **Exhibit E** – Declaration of Sandra J. Olson In Support Of Defendant's Motion For Summary Judgment

   - Exhibit A – Offer Letter – Mattress Warehouse 0000107-109

   - Exhibit B – Mattress Warehouse Employee Handbook – Mattress Warehouse 000111- 160

   - Exhibit C – W-2 Earnings Statements – Mattress Warehouse 000001-03

   - Exhibit D – Timecard Report – Mattress Warehouse 000004-22; Mattress Warehouse 000042-83

   - Exhibit E – Earnings Statements – Mattress Warehouse 000161-198; Plaintiff-105; Mattress Warehouse 000199-207; Plaintiff-115; Mattress Warehouse 000208-226

6. **Exhibit F** – Declaration of Gina Ramos In Support Of Defendant's Motion For Summary Judgment

## I.   INTRODUCTION

Defendant Mattress Warehouse, Inc. ("Mattress Warehouse" or "the Company") has moved this Court for an Order granting it summary judgment on Plaintiff's Complaint, in its entirety, pursuant to Fed. R. Civ. P. 56. Mattress Warehouse respectfully submits this Brief in support of that Motion.

In her Complaint, ECF No. 1, Plaintiff Diane Johnson seeks unpaid overtime wages on behalf of herself, and others similarly situated, as both a class and collective action representative, pursuant to the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA"). On March 20, 2020, largely based upon Plaintiff's actual pay stubs referenced in the Complaint, Mattress Warehouse moved to dismiss the Complaint, explaining that it could not be liable for overtime payments as a matter of law, as Plaintiff was a commissioned retail salesperson exempt from the overtime requirements of both the FLSA and PMWA. *See* ECF No. 4.

The Court denied Defendant's Motion to Dismiss by Memorandum Opinion and Order dated June 1, 2020, ECF Nos. 7 and 8, stating:  "Even if Johnson's paystubs are integral to her complaint such that they can be considered at this stage of the litigation, the Court is not convinced that they make it 'apparent' that Johnson's FLSA and PMWA claims should be dismissed based on Defendant's assertion of the 'retail commission overtime exemption' affirmative defense." ECF No. 7 at 9.

By Order dated June 26, 2020, ECF No. 17, in accordance with the agreement of the Parties, the Court ordered the Parties to proceed with discovery with respect to Plaintiff's individual claims (and the Company policies and practices applicable to her claims), set a schedule for summary judgment motions on Plaintiff's individual claims, and stayed all discovery related to the class/collective until after the Court rules on any motion for summary judgment on Plaintiff's individual claims. The Parties thereafter engaged in discovery in accordance with this Order.

Having fully fleshed out the issues, questions and concerns raised by the Court in its Memorandum Opinion on the Motion to Dismiss, Defendant Mattress Warehouse submits that the applicability of the Retail Sales Exemption to Plaintiff under the FLSA and PMWA is ripe for adjudication by the Court. Under the plainly undisputed facts, Plaintiff was not entitled to overtime under the FLSA and PMWA as a matter of law. Because Plaintiff cannot prevail on her own claims, much less as a class or collective representative, summary judgment must be granted.

## II.    STATEMENT OF FACTS

Pursuant to the Court's Policies and Procedures, a Statement of Undisputed Material Facts ("SMF"), including specific references to the parts of the record that support the statements, is attached hereto as Exhibit A. The facts set out in the SMF are hereby incorporated by reference, and all citations in this Brief are made to the SMF, unless otherwise indicated.

Defendant Mattress Warehouse operates more than 280 retail mattress stores in Maryland, Washington, D.C., Pennsylvania, New Jersey, Virginia, West Virginia, Delaware, North Carolina, and South Carolina. In these stores. Mattress Warehouse salespeople sell mattresses and related accessories (such as pillows, covers, beds, frames, and sheets) to the general public for daily use. (SMF at ¶1). These sales associates generally work on a commission basis (with a guaranteed minimum), (*see, e.g.*, SMF at ¶¶6, 9-12), although the Company pays sales personnel in its low-volume stores on an hourly basis (with overtime). (SMF at ¶8). The sales associates working on the hourly plan typically earn less than commissioned sales associates, even with overtime. (SMF at ¶8).

Mattress Warehouse hired Plaintiff Diane Johnson to be a commissioned salesperson in June of 2017. (SMF at ¶¶4-22). She remained a commissioned salesperson until she stopped working in February of 2020. (SMF at ¶24). Under the commission pay plan, Plaintiff received a certain amount of commissions on each sale she made, based on which specific item she sold and

the price for which she sold it, along with an array of other employee benefits, including life insurance, short and long-term disability plans, a 401k with an employer match, CareFirst Health Benefits with prescription drug coverage, and dental and vision options. (SMF at ¶¶21, 25).

Under the commission pay plan, the Company paid Plaintiff, on a bi-weekly basis, the commissions she earned during the pay period, or a guaranteed minimum payment that is tied to a set hourly rate – $13.50 – for every hour she worked, whichever was greater. Thus, if the commissions Plaintiff earned during any two-week pay period were less than the equivalent of $13.50 per hour for each hour she worked during that pay period, Mattress Warehouse would make up the difference in her paycheck. (SMF at ¶¶9, 16-17, 22). Either way, she was ineligible for overtime pay on hours that she worked over 40 in a workweek.

Mattress Warehouse refers to this "difference" – *i.e.*, the gap between what a commissioned salesperson earns in commissions and his or her guaranteed base rate of dollars per hour – as "build" or "build-up," and notes the dollar amount of build beside the amount of commissions on its commissioned salespersons' bi-weekly earnings statements. (SMF at ¶10). Mattress Warehouse did not require Plaintiff to reimburse it from future commissions for any build payments included in her compensation (as some other retailers do), so she did not need to worry about earning a reasonable income while learning the mattress industry. (SMF at ¶12).

Plaintiff fully understood her commission plan. She was able to determine the amount of commissions she could earn on a prospective sale by looking in the Mattress Warehouse catalogue in her store, which set forth the commissions on each product based on a range of possible sales prices for that product. (SMF at ¶26). Plaintiff understood that she earned a better commission if she sold a mattress at list price than if she sold it below list price. (SMF at ¶27). She had leeway to drop the price to close a sale, and the discretion to decide whether or not to focus her energies

on selling products that would earn her higher commissions. (SMF at ¶28). She understood she had an incentive to try to sell higher commission items to increase her compensation and maximize her income. (SMF at ¶29). She could do this by selling products on which there were "spiffs" – additional compensation commissioned salespeople could earn by selling particular products Mattress Warehouse wanted to sell at a high volume. (SMF at ¶30). Plaintiff could also maximize her potential to make sales and earn commissions by working more than 40 hours a week if she wanted. (SMF at ¶36).

During her career with Mattress Warehouse, Plaintiff was not particularly successful at mattress sales. (SMF at ¶38). Plaintiff's supervisor, Gina Ramos, regularly met with her to coach her regarding how to improve her sales skills and increase her commissions. (SMF at ¶39). Ramos also made Plaintiff a "floater" – a sales associate who occasionally rotates from her home store into other stores – so she could learn from more successful salespeople in other stores and/or find a store that better fit her. (SMF at ¶40). Plaintiff was an "outlier" in her district, and at risk of discipline for failing to meet the "high performance" expectations Mattress Warehouse set for commissioned sales associates in the Employee Handbook she received. (SMF at ¶¶42-43).

Although Plaintiff's performance was inconsistent during her tenure at Mattress Warehouse, she nevertheless actually earned commissions in 66 out of 68 pay periods (97% of pay periods). (SMF at ¶45). The only two pay periods in which she did not earn commissions were the first two weeks of her employment, when she was first training to become a Mattress Warehouse sales associate. (SMF at ¶46). In fact, Plaintiff's earning statements show that she was paid *solely* with "straight" commissions (*i.e.*, her pay did not require a supplemental build payment) during: 15.4% of the pay periods for the one year period starting July 2, 2017 (when she started working); 11.5% of the pay periods for the one year period starting July 1, 2018; and 25% of the pay periods

starting June 30, 2019 (ending in February 2020, when she ceased working). (SMF at ¶56). Likewise, she was paid solely with "straight" commissions during 19.2% of the pay periods in both calendar years 2018 and 2019, respectively, ***and in 11 out of 68 pay periods (16.2%) during which she worked for the Company***. (SMF at ¶59).

The commissions Plaintiff earned during these periods was significant. Notably, Plaintiff's earning statements show that – whether on a rolling annual basis from the first pay period during which she worked, or on a calendar-year basis for the years 2018 and 2019 – ***more than 50% of her total compensation in a one-year representative period always came from commissions*** (ranging from 56.7% to 65.7% and 60.5%-63.7% of the time, respectively). (SMF at ¶¶52-55, 57-58).

That Plaintiff's commissions always exceeded 50% of her compensation in a one-year period (whether on a rolling annual or calendar-year basis) is key, because Mattress Warehouse uses a one-year representative period to ensure compliance with the retail sales overtime exemption to the Fair Labor Standards Act for all of its commissioned sales associates, including Plaintiff. (SMF at ¶60). Mattress Warehouse has used a one-year representative period for this purpose for at least a decade. (SMF at ¶61).

Mattress Warehouse uses this one-year representative period because it reflects the total earning pattern of a typical commissioned sales associate at Mattress Warehouse, taking into account the annually recurring fluctuations in the proportion of commission earnings to total compensation that all commissioned sales associates encounter. (SMF at ¶63). Using a one-year representative period "makes sense," because sales (and therefore, commissions) vary throughout each year based on the season, the different holidays throughout the year, etc., such that a one-year

period reasonably captures all of the variances in the repeating sales cycle. (SMF at ¶64). As explained in greater detail below, this was certainly the case with Plaintiff.

These wholly undisputed facts demonstrate that: 1) Plaintiff was a commissioned sales employee of a retail establishment; 2) her regular rate of pay (no less than $13.50 per hour) *always* exceeded one and one-half times the applicable minimum wage ($7.25 per hour) for every hour she worked; and 3) more than half of her total earnings in a one year representative period came from commissions on the retail sale of mattresses and related goods. Thus, Plaintiff was not entitled to overtime under the Fair Labor Standards Act ("FLSA") or the Pennsylvania Minimum Wage Act ("PMWA") as a matter of law. Because Plaintiff cannot prevail on her own claims, much less as a class or collective representative, summary judgment must be granted.

## III.   ARGUMENT

### A.   Summary judgment standards.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute is 'genuine' if there is a sufficient evidentiary basis on which a reasonable fact finder could return a verdict for the non-moving party, and a factual dispute is 'material' if it might affect the outcome of the case under governing law." *Shaw v. Temple Univ.*, 357 F. Supp. 3d 461, 472 (E.D. Pa. 2019) (citing *Kauchner v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006)). In considering the motion, the reviewing court must view all evidence in the light most favorable to the non-movant, "however 'unsupported assertions, conclusory allegations or mere suspicions' are insufficient to overcome a motion for summary judgment." *Id.* (quoting *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010)). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial *Celotex* burden can be met by showing that the non-moving party has 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Shaw*, 357 F. Supp. 3d at 472 (quoting *Celotex*, 477 U.S. at 322) (correction in original). If the movant meets their initial burden, the non-moving party is obligated to establish the existence of a genuine issue of a material fact by citing to evidence in the record, including depositions, documents, or affidavits. *Schooch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).

Here, the undisputed material facts demonstrate that Plaintiff was not entitled to overtime under the FLSA, 29 U.S.C. § 207(a)(1), or the PMWA, 43 P.S. § 333.104(c), because she was an exempt commissioned retail sales employee pursuant to the FLSA, 29 U.S.C. § 207(i), and the PMWA, 34 Pa. Code § 231.43(f). Therefore, summary judgment must be granted in Mattress Warehouse's favor.

      **B.**    **The undisputed material facts show that Plaintiff met the overtime exemption to the FLSA and PMWA for commissioned retail sales employees under 29 U.S.C. § 207(i) of the FLSA and 34 Pa. Code § 231.43(f) of the PMWA, and was not entitled to overtime pay.**

The FLSA requires that employees receive overtime compensation of "not less than one and one-half times" their regular pay rate for hours worked over forty per week. *See* 29 U.S.C. § 207(a)(1). The same rule exists under the PMWA. *See* 43 P.S. § 333.104(c). There are exceptions, however, to the FLSA and PMWA overtime rules, including an exemption for employees like Plaintiff who earned some of their pay in commissions from sales while working for retail

establishments like Mattress Warehouse (the "Retail Sales Exemption"). Specifically, FLSA

Section 7(i) provides:

> No employer shall be deemed to have violated subsection (a) by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, **_if_** (1) **_the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate_** applicable to him under section 206 of this title, and (2) **_more than half his compensation for a representative period (not less than one month) represents commissions on goods or services_**. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i) (emphasis added). The PMWA regulations mirror this FLSA exemption:

> (f) No employer may be deemed to have violated these §§ 231.41-231.43 by employing an employee of a retail or service establishment for a workweek in excess of 40 hours if:
>
> > (1) **_The regular rate of pay of the employee is in excess of 1 ½ times the minimum hourly rate applicable_**.
> >
> > (2) **_More than half of the employee's compensation for a representative period, not less than 1 month, represents commissions on goods or services_**. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

34 Pa. Code § 231.43(f) (emphasis added). The Third Circuit has held that, in cases concerning

the Retail Sales Exemption to the PMWA under 34 Pa. Code § 231.43(f), it is proper to give

deference to the federal interpretation of the FLSA because the language of the Pennsylvania

exemption "substantially parallels it." _Livi v. Hyatt Hotels Corp._, 751 F. App'x 208, 210-11 (3d

Cir. 2018) (affirming summary judgement on basis of Retail Sales Exemption to PMWA). "It

cannot be doubted that the two provisions are parallel. Accordingly, Pennsylvania law instructs

that interpretation of the PMWA's exemption is informed by case law interpreting the parallel

FLSA exemption." _Id_.

Congress enacted the Retail Sales Exemption to relieve employers from the obligation of paying overtime compensation to certain employees of retail establishments that pay them "wholly or in greater part on the basis of commissions. These employees are generally employed in so-called 'big ticket' departments . . . where commission methods of payment traditionally have been used, typically those dealing in ***furniture, bedding and home furnishings***[.]" 29 C.F.R. § 779.414 (emphasis added). This is precisely Mattress Warehouse's business. *See* Compl. (ECF No. 1) ¶¶ 8-9 ("Defendant operates over 250 retail mattress stores . . . [, and] employs salespeople who work at the stores, selling mattresses and related goods to store customers.").

The Supreme Court recently rejected the principle that FLSA exemptions, like the Retail Sales Exemption, should be construed narrowly. *See Encino Motorcars, LLC v. Navarro*, – U.S. –, 138 S. Ct. 1134, 1142 (2018). "Because the FLSA gives no 'textual indication' that its exemptions should be construed narrowly, 'there is no reason to give [them] anything other than a fair (rather than a "narrow") interpretation.'" *Id*. (quoting A. Scalia & B. Garner, *Reading Law* 363 (2012)). Furthermore,

> [t]he narrow-construction principle relies on the flawed premise that the FLSA "'pursues'" its remedial purpose "'at all costs.'" . . . But the FLSA has over two dozen exemptions in § 213(b) alone. . . . Those exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement. . . . We thus have no license to give the exemption anything but a fair reading.

*Id*. (citations omitted). *See also Secretary of Labor v. Bristol Excavating, Inc.*, 935 F.3d 122, 135 (3d Cir. 2019) ("'[A] fair reading' of the FLSA, neither narrow nor broad, is what is called for. [citation] And that is as should be expected, because employees' rights are not the only ones at issue and, in fact, are not always separate from and at odds with their employers' interests.") (citing *Encino Motorcars*, 138 S. Ct. at 1142).

As set forth in detail in each of the sections below, and on a "fair reading" of the Retail Sales Exemption that *Encino Motorcars* requires, Plaintiff met all of the elements of the Retail Sales Exemption while employed at Mattress Warehouse. Thus, she was not entitled to any overtime as a matter of law, and summary judgment must be granted.

> 1.   **Plaintiff concedes that she was an employee at a retail establishment, and there are no material facts to the contrary.**

For an employee to meet the Retail Sales Exemption, the employee must be employed by a retail or service establishment. 29 U.S.C. § 207(i); 29 C.F.R. § 779.411; 34 Pa. Code § 231.43(f). Under the FLSA, a retail establishment is an establishment "75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." 29 C.F.R. § 779.411. A retail establishment sells goods to the general public, serving the daily needs of the community, is at the end of the distribution stream, and does not take part in the manufacturing process. 29 C.F.R. § 779.318. "It sells to such public" things like "furniture." *Id*. Illustrative establishments include "furniture stores." *Id*.

In her Complaint, Plaintiff affirmatively alleges that Mattress Warehouse "operates ***retail*** mattress stores," "employs salespeople who work at the stores selling mattresses and related goods to store customers[]," and that Plaintiff was such a salesperson for Mattress Warehouse. (ECF No. 1 at ¶¶ 8-10) (emphasis added)). Additionally, 75% of Mattress Warehouse's annual dollar volume of sales of goods – mattresses and related accessories – is not for resale. (SMF at ¶2). Mattress Warehouse sells mattresses and related accessories like pillows, covers, beds, frames, and sheets to the general public for daily use, is at the end of the distribution stream of mattresses and related accessories, and does not take part in the manufacturing any of those items. (SMF at ¶¶1, 3). Mattress Warehouse sells furniture at retail. For these reasons, a disinterested member of the general public would recognize Mattress Warehouse's sales of mattresses, etc., as retail sales in

the mattress industry. Hence, there is no issue of material fact regarding whether Plaintiff was a retail sales employee of a retail establishment.

### 2. Plaintiff concedes that her regular rate of pay always exceeded one and one-half times the applicable minimum wage for every hour she worked, and there are no material facts to the contrary.

For an employee to meet the Retail Sales Exemption, the employee's regular rate of pay must exceed one and one-half times the minimum hourly rate set by law. 29 U.S.C. § 207(i)(1); 34 Pa. Code § 231.43(f)(1). The minimum hourly rate under federal and state law was $7.25 per hour between July 2017 and February 2020. *See* 29 U.S.C. § 206(a)(1)(C); 34 Pa. Code § 231.101(a)(4); *see also* 43 P.S. § 333.104(a.1) (requiring Pennsylvania minimum wage rates to match FLSA minimum wage rates to extent FLSA rates were higher).

In her Complaint, Plaintiff concedes that she always earned more than $10.88 per hour – one and one-half times the state and federal minimum wage of $7.25 per hour – because the payment structure Mattress Warehouse used for her guaranteed that she would always earn a minimum amount of $13.50 per hour for every hour she worked. (ECF No. 1 at ¶ 11). Plaintiff's signed offer letter and ADP earning statements reflect that she earned no less than $13.50 per hour for every hour she worked. (Olson Dec. Exh. A; Olson Dec. Exh. E). Therefore, there is no issue of material fact regarding whether Plaintiff's regular rate of pay exceeded one and one-half times the minimum hourly rate set by law during her employment with Mattress Warehouse.

### 3. The undisputed material facts show that more than 50% of Plaintiff's compensation in a representative period of one year was from commissions on the sale of goods.

For an employee to meet the Retail Sales Exemption, "more than half his compensation for a representative period (not less than one month) [must] represent commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on

goods or services without regard to whether the computed commissions exceed the draw or guarantee." 29 U.S.C. § 207(i)(2); *accord* 34 Pa. Code § 231.43(f)(2). "An employee who is paid a guarantee . . . computed in accordance with a bona fide commission payment plan or formula under which the computed commissions vary in accordance with the employee's performance on the job will qualify for exemption provided the conditions of 7(i)(1) are met." 29 C.F.R. § 779.416(b). Under such bona fide plan, "***all*** of the computed commissions will be counted as compensation representing commissions ***even though the amount of commissions may not equal or exceed the guarantee*** . . . in some workweeks." *Id*. (emphasis added).

As set forth in greater detail below, the undisputed material facts show that while Plaintiff's commissions did not always exceed the $13.50 per hour base rate that Mattress Warehouse guaranteed to her, more than 50% of her compensation for its representative period (one year) represented commissions she earned on the retail sale of goods (mattresses and related accessories) pursuant to a bona fide commission payment plan – which Plaintiff admits incentivized her to try to make sales to maximize her income.

### a. Mattress Warehouse uses a one year representative period.

"To determine whether commission payments are 'bona fide,' it is necessary to consider payments over the course of a 'representative period.'" *Johnson v. Mattress Warehouse, Inc*., No. CV 20-891, 2020 WL 2839109, at *3 (E.D. Pa. June 1, 2020) (ECF No. 7 at 7). The *only* statutory requirement under the FLSA is that the representative period be "not less than one month." 29 U.S.C. § 207(i)(2); *accord* 34 Pa. Code § 231.43(f)(2) ("not less than 1 month"). Nevertheless, the FLSA regulations attempt to put a little color on the clear language of the statute:

> [A] representative period . . . plainly contemplates a period which can reasonably be accepted by the employer, the employee, and disinterested persons as being truly representative of the compensation aspects of the employee's employment on which this exemption test depends. A representative period within the meaning of this exemption may be described generally ***as a period which typifies the total***

> ***characteristics of an employee's earning pattern in his current employment
> situation, with respect to the fluctuations of the proportion of his commission
> earnings to his total compensation*** . . . . ***The period chosen should be long enough
> to stabilize the measure of the balance between the portions of the employee's
> compensation which respectively represent commissions and other earnings,
> against purely seasonal or plainly temporary changes*** . . . [T]here may be
> situations in which the factors affecting the proportionate relationship between total
> compensation and compensation representing commissions ***will be substantially
> identical for a group or groups of employees in a particular occupation or
> department of a retail or service establishment or in the establishment as a whole***.
> . . . ***[T]he same representative period or formula for establishing such a period
> may properly be used for each of the similarly situated employees in the group***.

29 C.F.R. § 779.417 (a, c-d).

For purposes of determining compliance with the Retail Sales Exemption, Mattress

Warehouse has used a one-year representative period since at least 2010. (SMF at ¶61). There is

no evidence that a one-year period could, would, or should not be reasonably accepted by Mattress

Warehouse, Plaintiff, and any other disinterested person as being truly representative of the

"compensation aspects" of Plaintiff's employment. Although Mattress Warehouse's current

leadership does not know when or why Mattress Warehouse originally chose the one-year

representative period – a decision which preceded their employment – they know why Mattress

Warehouse *continues* to use it. (SMF at ¶62). A one-year period best typifies the total

characteristics of commissioned sales associates' earning patterns with respect to fluctuations of

the proportion of commission earnings to total compensation that all commissioned sales

associates at Mattress Warehouse encounter. (SMF at ¶63). Using a one-year representative period

"makes sense" because sales (and therefore, commissions) vary throughout each year based on the

season, the different holidays throughout the year, etc., such that a one-year period reasonably

captures all of the variances in the repeating sales cycle. (SMF at ¶64). Because the seasons and

holidays are events that impact all of its commissioned salespeople each year at the same time

(e.g., all associates are likely to sell more around certain holiday sales), Mattress Warehouse uses

the same representative period for all commissioned sales associates who are, of course, all selling the same mattresses and related accessories under the same pay plan. (SMF at ¶¶63-64).

Moreover, a quick review of Plaintiff's ADP earning statements, (Olson Dec. Exh. E), shows variability in the commissions she earned from pay period to pay period. In some periods, and at various times of the year, Plaintiff earned $1,500-$2,700 in straight commissions. (SMF at ¶50). In other periods, she required a build from Mattress Warehouse to reach her base rate of $13.50 per hour. (*See, e.g.,* SMF at ¶49). This ***variability***, however, transforms into relative ***uniformity*** with the proper lens – a complete, one-year representative period that captures the total characteristics of a commissioned sales associate's earning pattern at Mattress Warehouse. For example, despite the variability in Plaintiff's earnings from pay period to pay period, she earned straight commissions (*i.e.*, her pay did not require a supplemental build payment) the same number of times in calendar years 2018 and 2019.[1] (SMF at ¶59). In both 2018 and in 2019, Plaintiff was paid "straight" commissions in 5 out of 26 pay periods (*i.e.* 19.2%) each year. (SMF at ¶59). Similarly, Plaintiff earned 63.7% of her income from commissions in calendar year 2018, and 60.5% of the time in calendar year 2019. (SMF at ¶58). If instead of using a calendar year, the Court examines Plaintiff's earning patterns on an annual rolling basis, the results are similar. *See* SMF at ¶¶53-56.

Thus, despite the variability in Plaintiff's compensation over short periods of time, Plaintiff's ability to make sales and bring in commissions consistently evens out over the course of a year. These facts, based solely on the undisputed information in Plaintiff's earning statements, highlight the accuracy and appropriateness of a one-year representative period when assessing

---

[1] These are the only two complete calendar years in which Plaintiff worked, because she started in July 2017 and stopped working in February 2020.

Plaintiff's (as well as other salespersons') compensation for compliance with the Retail Sales Exemption.

> **b.** **The undisputed material facts show that the commission plan under which Mattress Warehouse paid Plaintiff is a bona fide commission plan within the meaning of the FLSA and PMWA.**

The FLSA, PMWA, and their regulations do not explicitly define "commission" or "bona fide commission plan." However, several courts, including the Third Circuit, have fashioned multi-factor tests and identified relevant considerations for assessing whether compensation constitutes commissions pursuant to a bona fide commission payment plan. For example, in *Parker v. NutriSystem, Inc.,* the Third Circuit identified the following factors to determine if the payment plan was "bona fide": (1) whether the commission its employees earned was a percentage or proportion of the ultimate price passed on to the consumer; (2) whether the commission its employees earned was decoupled from the actual time worked, so there was an incentive for the employee to work more efficiently and effectively; and (3) whether the commission plan offended the purpose of the overtime rules to protect "low-income type employees" from working absurdly long hours, induce the hiring of additional workers, and protect workers from health risks or accidents due to fatigue from long hours of labor. 620 F.3d 274, 283-84 (3d Cir. 2010).

Mattress Warehouse submits that the continued usefulness (and validity) of the third factor identified by the Third Circuit in *Parker* is highly doubtful in light of the Supreme Court's subsequent admonition to give the FLSA exemptions a "fair reading" instead of a "narrow construction." *Encino Motorcars*, 138 S. Ct. at 1142 ("[t]he narrow-construction principle relies on the flawed premise that the FLSA 'pursues' its remedial purpose 'at all costs.'"). The plain language of the statutory exemption – fairly read – precludes the weighing of interests envisioned by the court in *Parker*. Nevertheless, as discussed below, Mattress Warehouse submits that it easily satisfies the *Parker* factors in assessing the bona fides of its commission plan.

In addition to the above factors, the Third Circuit noted in *Parker*, quoting the FLSA regulations, that "[a] commission rate is not bona fide if the formula for computing the commissions is such that the employee, in fact, always or almost always earns the same fixed amount of compensation for each workweek (as would be the case where the computed commissions **seldom or never** equal or exceed the amount of the draw or guarantee [provided by an employer to assure the employee of a certainly minimum rate]). *Id*. at 280 n.3 (quoting 29 C.F.R. § 779.416(c)) (emphasis added)." "[I]f an employee exceeds the guarantee in wages **more than 10% of time, that employee has a wage that exceeds the amount** of the draw or guarantee **more often than seldom**." *Gordon v. TBC Retail Grp., Inc*., No. 2:14-CV-3365-DCN, 2020 WL 3259394, at *10 (D.S.C. June 16, 2020) (citing *Encino Motorcars, LLC* "fair-reading" principle for interpreting overtime exemptions for support) (emphasis added); *see also McAninch v. Monro Muffler Brake Inc.*, 799 F. Supp. 2d 807, 818 (S.D. Ohio 2011) (employee's pay, which exceeded draw 19% of the time, was not "seldom or never").

Notwithstanding the caveat that a payment plan or rate is not bona fide if the employee's commissions subject to that plan "seldom or never" exceed a draw or guarantee, the Retail Sales Exemption "anticipates the use of guaranteed minimum pay as part of a bona fide commission plan." *Crawford v. Saks & Co.*, No. CV H-14-3665, 2016 WL 3090781, at *4 (S.D. Tex. June 2, 2016) (compensation plan guaranteed employees minimum hourly wage based on set dollar amount multiplied by hours worked, regardless of commissions earned); *Gordon*, 2020 WL 3259394 at *11 (compensation plan guaranteed that employees who did not earn enough commissions to make at least one and one-half times statutory minimum wage for all actual hours worked would receive supplemental payment to make up difference (*i.e.* "differential pay")). Thus, it is perfectly acceptable for an employer to guarantee a minimum amount that an employee will

receive each pay period based on the employee's hours, so long as the employee's commissions exceed the guarantee at a rate greater than "seldom" or "never."

The undisputed material facts demonstrate that the plan under which Mattress Warehouse paid Plaintiff satisfies the *Parker* factors, and more. First, Plaintiff received commissions in 66 out of 68 two-week pay periods during her employment, based upon a percentage or portion of the ultimate price passed to consumers of Mattress Warehouse's mattresses and related accessories. (SMF at ¶¶24-25). Mattress Warehouse based the percentage of commissions Plaintiff would receive on both the particular item Plaintiff sold, and the price for which she sold it. (SMF at ¶25). To this point, Mattress Warehouse had a catalogue so that Plaintiff would be able to determine the commissions she could earn in advance of a sale by product and price range. (SMF at ¶26). Plaintiff also knew if she sold a mattress, for example, at list price, she would get more commission than if she sold it below list price. (SMF at ¶27). She could drop the price to close a sale, and choose to focus her energies on selling products that would bring a higher commission. (SMF at ¶28).

Second, the amount of commissions Plaintiff earned in a given pay period was not coupled to the amount of actual time worked, so that Plaintiff had an incentive to work more efficiently and effectively at selling mattresses. (SMF at ¶¶25-29). As Plaintiff admitted in her deposition, she had an incentive to make sales to maximize her income. (SMF at ¶29). The more Plaintiff sold, and the more higher price items Plaintiff sold, the more money she could make. (SMF at ¶¶25-29). In fact, this is the whole point of the Mattress Warehouse system. The more they sell, the better the commissioned salespeople do financially, and the better the Company does financially. (Papettas Dec. at ¶9). The symbiosis is self-evident. *See Bristol Excavating*, 935 F.3d at 135 ("'[A] fair reading' of the FLSA, neither narrow nor broad, is what is called for… ***because employees'***

***rights … are not always separate from and at odds with their employers' interests***.") (citing *Encino Motorcars*, 138 S. Ct. at 1142) (emphasis added).

Third, the commission plan under which Plaintiff was paid does not offend the "purposes" of the overtime rules. Plaintiff was not the "low-income type [of] employee[]" they were designed to protect. To the contrary, Plaintiff was *guaranteed significantly more* than one and one half times the minimum wage for *all* hours she worked – effectively providing her, at a minimum, with overtime premium pay for *all* her work time. (SMF at ¶17). Plaintiff was also eligible for a slew of benefits on top of her earnings, including life insurance, short and long-term disability plans, 401k with an employer match, CareFirst Health Benefits with prescription drug coverage and dental and vision options. (SMF at ¶21). In addition, there are no health risks attendant to working long hours selling mattresses and related accessories in a retail store, and Plaintiff worked, on average, a reasonable 54 hours a week, typical in the retail environment. (SMF at ¶37). Plaintiff could choose to work more to increase her chance of making more sales. (SMF at ¶36).

Fourth, although Mattress Warehouse guaranteed Plaintiff a base rate of $13.50 per hour for each hour she worked in a given pay period in the event her commissions for that pay period were low, that is an entirely typical component of a bona fide commissions pay plan. (SMF at ¶¶9, 17). The Retail Sales Exemption to the overtime rules "anticipates the use of guaranteed minimum pay as part of a bona fide commission plan", *Crawford*, 2016 WL 3090781, at *4, to ensure that employees' regular rate always exceeds one and one-half times the minimum wage. And in this case, ***Plaintiff's commissions exceeded her guarantee in 11 out of 68 pay periods – 16.7% of the time***, (*see* SMF ¶ 56), plainly more than "seldom or never."

In sum, there is no genuine issue of material fact regarding whether Plaintiff was paid commissions pursuant to a bona fide commission payment plan.

> **c.** **More than 50% of Plaintiff's compensation in a one-year representative period was from commissions on the sales of goods.**

Having established that Mattress Warehouse uses a one-year representative period to assess compensation for compliance with the Retail Sales Exemption, that such period is appropriate for assessing Plaintiff's compensation, and that Plaintiff earned commissions on the sales of goods subject to a bona fide commissions pay plan, only one question remains: *did more than 50% of Plaintiff's compensation in each one-year representative period come from commissions on the sale of mattresses and related accessories?* Plaintiff's earning statements unequivocally confirm that, yes, Plaintiff ***always*** earned more than 50% of her compensation over the one-year representative period from commissions on sales. (*See* SMF at ¶¶52-55, 57-58).

As set forth below, no matter how one looks at the undisputed data, the results are the same. If the Court starts the one-year representative period on the first day of Plaintiff's first pay period and proceeds forwards, her earning statements show that more than 50% of her compensation in each one-year period (or part thereof) was from commissions on sales. (SMF at ¶¶52-55). If the Court looks at the calendar years 2018 and 2019 – the only two full calendar years the Plaintiff worked at Mattress Warehouse –more than 50% of her compensation in each of those years was from commission on sales. (SMF at ¶¶57-58).

> **i.** **Rolling annual basis**

For the pay periods starting July 2, 2017 and ending June 30, 2018, 56.7% of Plaintiff's earned income was from commissions (*i.e.*, $22,102.74 out of $39,011.42). (SMF at ¶53). For the pay periods starting July 1, 2018 and ending June 29, 2019,[2] 60.9% of Plaintiff's earned income

---

[2] The start and end dates of each respective pay period change minimally from year to year as a natural consequence of the calendar, as do the dates on which employees receive their compensation for each of those periods. (Olson Dec. at ¶30).

was from commissions (*i.e.*, $24,154.64 out of $39,681.01). (SMF at ¶54). For the pay periods starting June 30, 2019 and ending February 8, 2020 (Plaintiff stopped working in February 2020), 65.7% of Plaintiff's earned income was from commissions (*i.e.*, $15,929.97 out of $24,255.85). (SMF at ¶55).

### ii.    Calendar basis for 2018 and 2019

In calendar year 2018, 63.7% of Plaintiff's earned income was from commissions (*i.e.*, $25,441.69 out of $39,947.79), and in calendar year 2019, 60.5% of Plaintiff's earned income was from commissions (*i.e.*,  $25,098.69 out of $41,482.86). (SMF at ¶58).

Thus, there is no genuine issue of material fact regarding whether more than 50% of Plaintiff's compensation was from commissions on the sale of goods over a one-year representative period.

## IV.    CONCLUSION

As the undisputed facts make clear, Plaintiff was a retail sales employee who was not entitled to overtime under the Retail Sales Exemption to the FLSA and PMWA as a matter of law. Accordingly, Mattress Warehouse respectfully asks that the Court grant summary judgment in Defendant's favor and dismiss Plaintiff's Complaint, in its entirety and with prejudice, pursuant to Fed. R. Civ. P. 56.

Respectfully submitted:

Dated: October 26, 2020                          By: */s/ Henry A. Platt*
                                                 Henry A. Platt, Esq. (*Admitted Pro Hac Vice*)

                                                 **SAUL EWING ARNSTEIN & LEHR LLP**
                                                 Henry A. Platt, Esq.
                                                 1919 Pennsylvania Ave., N.W., Suite 550
                                                 Washington, D.C. 20006
                                                 T: (202) 342-3447
                                                 Henry.Platt@saul.com

Jessica L. Meller, Esq.
1500 Market Street, Centre Sq. W., Fl. 38
Philadelphia, PA 19102
T: (215) 972-7104
Jessica.Meller@saul.com

*Attorneys for Defendant Mattress Warehouse, Inc.*