IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIANE JOHNSON, on behalf of herself and others similarly situated,<br>　　　　　　　　　　Plaintiff,<br>　　　v.<br>MATTRESS WAREHOUSE, INC.,<br>　　　　　　　　　　Defendant. | :<br>:<br>:　2:20-cv-00891-GJP<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Diane Johnson ("Plaintiff") has sued Mattress Warehouse, Inc. ("Defendant") for failing to pay her overtime premium compensation in violation of the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA"). Defendant has moved for summary judgment, arguing that Plaintiff falls within the retail commission exception to the overtime laws.

Defendant's motion should fail. The retail commission exemption requires Defendant to prove that Plaintiff was paid a "*bona fide* commission rate," *see* Section A *infra*, and Defendant cannot satisfy its burden of proof for seven independent reasons, *see* Section C *infra*.

**A. Pertinent Legal Principles.**

The FLSA and PMWA entitle employees to overtime premium compensation "not less than one and one-half times" their regular pay rate for hours worked over 40 per week *See* 29 U.S.C. § 207(a)(1); *accord* 43 P.S. § 333.104(c). Defendant asserts that Plaintiff falls within an overtime exemption codified in the FLSA's statutory text, *see* 29 U.S.C. § 207(i), and repeated in a PMWA regulation, *see* 34 Pa. Code § 231.43(f). Our Court of Appeals calls this particular exemption the "retail commission exception." *See Parker v. NutriSystem, Inc.*, 620 F.3d 274,

277 (3d Cir. 2010). Importantly, Defendant bears the burden of proving the exception's applicability. *See id.*

Under the retail commission exception, "the fee paid to the employee must be based on a **bona fide commission rate**.'" *Parker*, 620 F.3d at 278 (quoting 29 U.S.C. § 207(i)) (emphasis supplied); *accord* 34 Pa. Code §231.43(f)(2). Crucially, "[t]o determine whether commission payments are '*bona fide*,' it is necessary to consider payments over the course of a '***representative period***.'" *Johnson v. Mattress Warehouse, Inc.*, 2020 WL 2839109, 2020 U.S. Dist. LEXIS 95192, *9 (E.D. Pa. June 1, 2020) (Pappert, J.) (quoting 29 C.F.R. § 779.417) (emphasis suppled).

FLSA regulations explain how an appropriate "representative period" should be determined. Specifically:

> The [FLSA] . . . plainly contemplates a period which can reasonably be accepted by the employer, the employee, and disinterested persons as being truly representative of the compensation aspects of the employee's employment on which this exemption test depends. A representative period within the meaning of this exemption may be described generally as a period which typifies the total characteristics of an employee's earning pattern in his current employment situation, with respect to the fluctuations of the proportion of his commission earnings to his total compensation.

*Id.* at § 779.417(a); *accord Johnson*, 2020 U.S. Dist. LEXIS 95192, at *9-10. Moreover:

> Although the period selected and designated must be one which is representative with respect to the particular employee for whom exemption is sought, and the appropriateness of the representative period for that employee will always depend on his individual earning pattern, there may be situations in which the factors affecting the proportionate relationship between total compensation and compensation representing commissions will be substantially identical for a group or groups of employees in a particular occupation or department of a retail or service establishment or in the establishment as a whole. Where this can be demonstrated to be a fact, and is substantiated by pertinent information in the employer's records, the same representative period or formula for establishing such a period may properly be used for each of the similarly situated employees in the group.

29 C.F.R. § 779.417(d).

In addition, "an appropriate representative period or a formula for establishing such a period must be chosen and must be substantiated in the employer's records." 29 C.F.R. § 779.417(d).  In this regard, the employer "shall maintain and preserve . . . [a] copy of the agreement or understanding under which [the retail commission exemption] is utilized or, if such agreement or understanding is not in writing, a memorandum summarizing its terms including the basis of compensation, the applicable representative period and the date the agreement was entered into and how long it remains in effect." *Id.* at § 516.16(b).

Finally, the FLSA regulations address the circumstances under which "guaranteed" payment schemes constitute a "bona fide commission rate."  Specifically:

> A commission rate is not bona fide if the formula for computing the commissions is such that the employee, in fact, always or almost always earns the same fixed amount of compensation for each workweek (as would be the case where the computed commissions seldom or never exceed the amount of the draw or guarantee).

29 C.F.R. § 779.416(c); *accord Johnson*, 2020 U.S. Dist. LEXIS 95192, at *8-9.

**B. The Pertinent Issue:  Was Plaintiff Paid a *Bona Fide* Commission Rate Under 29 C.F.R. § 779.416(c)?**

It is undisputed that Plaintiff worked for Defendant as a salesperson from July 7, 2017 until February 18, 2020.  *See* Declaration of Sandra J. Olson ("Olson Dcl.") (ECF No. 22-11) at ¶ 6 and Ex. D.  She regularly worked over 50 hours per week and, during some weeks, worked over 60 hours.  *See id.* at Ex. D and E.  Unfortunately for Plaintiff, Defendant deemed her "ineligible for overtime pay," Defendant's Statement of Undisputed Material Facts ("SUMD") (ECF No. 22-2) at ¶ 9, based upon the retail commission exception, *see generally* Defendant's Brief ("Def. Br.") (ECF No. 22-1).

Defendant "guaranteed Plaintiff a minimum of $13.50 per hour for every hour she worked."  Olson Dcl. (ECF No. 22-11) at ¶ 20; SUMD (ECF No. 22-2) at ¶ 9.  Thus, "if the

3

commissions [Plaintiff] earned during any two-week pay period were less than the equivalent of $13.50 per hour for each hour she worked that pay period, [Defendant] would make up the difference in her paycheck." *Id.*; *accord* Declaration of Peter Varcos ("Varcos Dcl.") (ECF No. 22-10) at ¶ 12.

Based on the above, Defendant paid Plaintiff under the type of "guaranteed" payment scheme addressed in 29 C.F.R. § 779.416(c). As such, Plaintiff's commission rate is not *bona fide* – and the retail commission exception is not allowed – if her "computed commissions seldom or never exceed the amount of the draw or guarantee." 29 C.F.R. § 779.416(c).

Crucially, this "seldom or never" inquiry is made in the context of determining whether Plaintiff's commissions were *bona fide*. *See* 29 C.F.R. § 779.416(c). As such, the inquiry must be made based on an evaluation of Plaintiff's compensation during the course of an appropriate "representative period." *See Johnson*, 2020 U.S. Dist. LEXIS 95192, at *7-12; *accord* 29 C.F.R. § 779.417.

### C. Summary Judgment is Improper for Seven Independent Reasons.

Plaintiff wishes *she* could move for summary judgment. Unfortunately, because this is a class action lawsuit, the rule against one-way intervention prevents her from doing so at the pre-class certification stage. *See Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1057-58 (7th Cir. 2016). So Plaintiff will resign herself to explaining why Defendant's summary judgment motion should fail.

At the outset, it should be noted that Defendant has an uphill climb. As with any summary judgment motion, Defendant must "prove[] that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." *Kennedy v. City of Philadelphia*, 2020 U.S. Dist. LEXIS 105618, *7 (E.D. Pa. June 15, 2020) (Pappert, J.). In

4

addition, Defendant bears the burden of proving the retail commission exception's applicability. *See Parker*, 620 F.3d at 277.

As discussed below, Defendant's summary judgment motion should fail for seven independent reasons:

### 1. Defendant cannot establish a *bona fide* commission rate because it maintains no documentation addressing any "representative period."

Defendant asserts that Plaintiff's compensation should be evaluated based on a one-year "representative period." *See* SUMD (ECF No. 22-2) at ¶¶ 61-64; Def. Br. (ECF No. 22-1) at pp. 12-15. However, Defendant has failed to produce any documentation of the one-year period's existence. Indeed, the *only* document Defendant can muster is Plaintiff's offer letter. *See* SUMD (ECF No. 22-2) at ¶¶ 15-17; Varcos Dcl. (ECF No. 22-10) at ¶ 17 and Ex. B. But this offer letter makes no mention of any representative period. *See id.*

Moreover, at deposition, Human Resources Manager Sandra Olson explained that no documents exist addressing the purported one-year representative period. *See* Deposition of Sandra J. Olson ("Olson Dep.") (Ex. 1) at 43:16-44:4. As Ms. Olson explains, the one-year period is "not documented." *Id.* at 44:3-44:4; *accord id.* at 48:18-48:21 (Q: "Are you aware of any documents that would have been given to Ms. Johnson addressing the one year representative period?" A: "I'm not aware of any, no."); *id.* at 49:25-50:6 (Q. "Does the company maintain any memoranda or writings that are kept in the file in order to manifest that the employee has agreed to this one year representative period we've been discussing?" A: "No."); *id.* at 23:22-24:23 (Olson explains that she searched for documents and found nothing).[1]

---

[1] In 2020 – after the commencement of this litigation and after the termination of Plaintiff's employment – Defendant for the first time inserted language regarding the one-year representative period into its employee handbook. *See* Olson Dep. (Ex. 1) at 59:16-60:16. Of course, such post-litigation conduct is irrelevant to Plaintiff's legal claims. However, if Plaintiff

HR Manager Olson's testimony is consistent with Defendant's responses to Plaintiff's written document requests. Specifically, Plaintiff asked Defendant to produce all documents that "concern, reflect or pertain to . . . the development, implementation and terms/conditions of the one-year representative period referenced in [Olson's] March 19, 2020 declaration." Defendant's Objections and Responses to Plaintiff's Document Requests ("Def. Doc. Resp.") (Ex. 2) at p. 5, Request 10. In response, Defendant asserted that the request was "irrelevant." *Id.* at p. 6. Defendant then elaborated that "the one-year representative period has been in use since before . . . 2010 and tracking down the history of this irrelevant information during the pandemic is unreasonable." *Id.* at p. 6.

Defendant's lack of documentation regarding the purported one-year representative period is fatal to its retail commission exception defense. As previously explained, FLSA regulations require that "an appropriate representative period or a formula for establishing such a period must be chosen and must be substantiated *in the employer's records*." 29 C.F.R. § 779.417(d) (emphasis supplied). In this regard, Defendant was required to "maintain and preserve . . . [a] copy of the agreement or understanding under which [the retail commission exemption] is utilized or, if such agreement or understanding is not in writing, a memorandum summarizing its terms including the basis of compensation, *the applicable representative period* and the date the agreement was entered into and how long it remains in effect." *Id.* at § 516.16(b) (emphasis supplied).

In sum, Defendant has violated clear FLSA regulations by failing to maintain any documents addressing the purported one-year representative period. As such, Defendant cannot

---

survives summary judgment, Defendant may argue that the 2020 handbook mitigates the claims of putative class/collective members.

satisfy its burden of proving that Plaintiff was paid a *bona fide* commission rate.

### 2. Defendant cannot establish a *bona fide* commission rate because it failed to reach any agreement with Plaintiff concerning any representative period.

The pertinent regulations also require that any "representative period" be agreed-upon between the employer and the employee. Specifically: "The [FLSA] . . . plainly contemplates a period which ***can reasonably be accepted by*** the employer, the employee, and disinterested persons . . . ." 29 C.F.R. § 779.417(a) (emphasis supplied). Likewise, employers must "maintain and preserve . . . [a] copy of the ***agreement or understanding*** under which [the retail commission exemption] is utilized or, if such agreement or understanding is not in writing, a memorandum summarizing its terms including the basis of compensation, the applicable representative period ***and the date the agreement was entered into*** and how long it remains in effect." *Id.* at § 516.16(b).

Here again, Defendant fails to comply with clear regulatory mandates. Indeed, HR Manager Olson has testified that Defendant does not reach any agreement with its salespeople regarding the purported one-year representative period:

> **Q.** Let me think here for a second. Is it the company's position that its not necessary to reach agreement with the salesperson regarding the one-year representative period?
> **A.** That's right.

Olson Dep. (Ex. 1) at 51:9-51:13.

Ms. Olson's testimony explains why Defendant's summary judgment papers are entirely silent with respect any agreement between Plaintiff and Defendant regarding the representative period. For example, Defendant identifies Regional Sales Manager Peter Varcos as the person who "decided to hire Plaintiff as a commission-based salesperson." Defendant's Objections and Responses to Plaintiff's Interrogatories ("Def. Interrog. Resp.") (Ex. 3) at p. 4. Mr. Vargos also

7

"verbally communicated with Plaintiff concerning the manner and method by which her pay would be, and was, calculated when he originally interviewed her at the King of Prussia Mall's food court in Summer 2017." *Id.*  Yet, Mr. Varcos' detailed declaration makes no mention of ever addressing the representative period with Plaintiff.  *See* Varcos Dcl. (ECF No. 22-10) at ¶¶ 8-14.  This is unsurprising, since Defendant's "current leadership does not know when or why [Defendant] originally chose the one-year representative period, because that decision preceded their employment with [Defendant]."  SUMD (ECF No. 22-2) at ¶ 62.

In sum, Defendant has not even attempted to prove that it ever addressed the purported one-year representative period with Plaintiff.  There was no agreement in this regard.  As such, Defendant cannot satisfy its burden of proving that Plaintiff was paid a *bona fide* commission rate.

### 3. Defendant cannot establish a bona fide commission rate because it failed to consider Plaintiff's individual circumstances in determining the representative period.

As observed in Section A *supra*, FLSA regulations require that "the period selected and designated ***must be*** one which is representative with respect to the particular employee for whom exemption is sought, and the appropriateness of the representative period for that employee will ***always*** depend on his individual earning pattern." 29 C.F.R. § 779.417(d) (emphasis supplied). While the regulation allows the consideration of more generalized earnings data, *see id.*, such allowance does not override the fundamental directive that the employee's individual circumstances are paramount.  *See id.*

Defendant violated the above rule, and HR Manager Olson's deposition testimony proves the point:

> **Q.** And my question is to you, Ms. Olson, did the company, to your knowledge, take into account any of Ms. Johnson's individual circumstances in utilizing a one year period as opposed to some other period in assessing her compensation?
> **MR. PLATT:** I'll object to the form.  If you can answer it, you can answer it.
> ***A.  No, we applied the one year to everybody on the hours versus commission.***

Olson Dep. (Ex. 1) at 47:12-47:22 (emphasis supplied); *see also id.* at 44:5-44:8 (Q. "Does the company ever consider deviating from the one year period for a particular salesperson?" A. "No."); *see generally id.* at 44:5-48:17; Deposition of Peter Varcos ("Varcos. Dep.") (Ex. 4) at 14:10-14:25 (explaining that, in hiring Plaintiff, he had no authority to alter the terms of the compensation plan).

In sum, Defendant's failure to account for Plaintiff's individual circumstances in determining the representative period precludes Defendant from establishing that Plaintiff was paid a *bona fide* commission rate.

### 4. Defendant has waived its right to present its post-litigation rationale for the one-year representative period.

Lacking any contemporaneous evidence concerning the purported one-year representative period, Defendant presents a post-litigation rationale for the period.  Specifically, Defendant argues that a one-year period "best typifies the total characteristics of commissioned sales associates' earning patterns with respect to fluctuations of the proportion of commission earnings to total compensation that commissioned sales associates at [Defendant] encounter."  Def. Br. (ECF No. 22-1) at p. 13; *see also* SUMD (ECF No. 22-2) at ¶¶ 63-64.  In other words, Defendant attempts to rationalize the one-year representative period based on the purported sales and commission experience of ***all*** sales associates.

The court should not permit Defendant to make this argument.  During discovery, Defendant flatly refused to provide Plaintiff with any sales or commission data concerning other salespeople.  For example, Plaintiff served an interrogatory seeking weekly sales and

commission information for Defendant's salespeople generally.  *See* Def. Interrog. Resp. (Ex. 3) at pp. 7-8.  Defendant refused to provide such information, asserting, among other things that "the requested information has **no relevance** to the claims in this action."  *See id.* at pp. 7-8 (emphasis supplied).  According to Defendant, only *Plaintiff's* sales and commission information was relevant.  *See id.*  Defendant took the same approach in responding to Plaintiff's document requests.  *See* Def. Doc. Resp. (Ex.2) at pp. 7-9.

It is unfair and improper for Defendant to refuse to provide as "irrelevant" company-wide sales or commission information in discovery and subsequently argue that the purported one-year representative period is justified based on company-wide sales and commission patterns.  What's sauce for the goose is sauce for the gander.

### 5. Defendant's rationale for the purported one-year representative period is based on declarations that contradict deposition testimony and on a mischaracterization of HR Manager Olson's deposition testimony.

Defendant's statement of undisputed facts admits that the "current leadership does not know when or why [Defendant] originally chose the one-year representative period, because that decision preceded their employment with [Defendant]."  SUMD (ECF No. 22-2) at ¶ 62.  Notwithstanding, the statement goes on to include two conclusory paragraphs that provide an explanation for Defendant's present use of the one-year period.  *See id.* at ¶¶ 63-64.  These paragraphs are supported by citations to (i) declarations sworn out by Defendant's President Bill Papettas and HR Manager Olson and (ii) Ms. Olson's deposition transcript.  *See id.*

HR Manager Olson's declaration cannot be squared with her deposition testimony.  Specifically, at deposition, Ms. Olson explained that she had no knowledge of the reason behind the purported one-year representative period beyond pure speculation:

> **Q.**  Do you have any awareness as to why the one year period has been chosen as opposed to some other period?

> **MR. PLATT:** Objection. Hold on. I'll object to the extent any knowledge you have comes from your conversations with counsel. If you have independent knowledge of that, by all means, answer the question, but I'll instruct you not to answer anything that you've learned in discussions with your counsel. If you can answer, go ahead.
> **A.** Okay. *I don't know the absolute rationale behind it. I would be guessing.*
> **Q.** In your capacity as the head of HR at the company, leaving aside discussions with lawyers, do you have any knowledge as to why the one year period was chosen as opposed to some other period?
> **A.** *No, I don't have direct knowledge.*
> **Q.** Well, do you have any indirect knowledge?
> **A.** I would – I mean my thoughts on that is the cyclical, you know, the cycle that the sales goes through, the holidays, the summer months, so it makes sense to me that it would be a year to capture, you know, to use that as the snapshot because of all the variances throughout the year. So to me it makes sense, *but I wasn't present when that determination was made*.
> **Q.** Why wouldn't a six month period make sense in your own mind?
> **A.** If you have someone new starting, six months just doesn't -- it doesn't go through the full cycle.
> **Q.** What if it's someone who has been working there for a while?
> **A.** *I don't have an answer for that.*

Olson Dep. (Ex. 1) at 42:3-43:15 (emphasis supplied).

In addition to contradicting her declaration, the above transcript passage demonstrates how Defendant's factual assertion at paragraph 64 of the statement of material facts misappropriates Ms. Olson's testimony. Therein, Defendant cites to the transcript lines starting at page 42 line 22 and ending at page 43 line 7. *See* SUMD (ECF No. 22-2) at ¶ 64. This selective use of Ms. Olson's deposition testimony enables Defendant to conveniently ignore other damaging testimony such as: (i) "I don't know the absolute rationale behind it. I would be guessing" at page 42, lines 14-15, and (ii) "No, I don't have direct knowledge" at page 42, line 21, and (iii) "I don't have an answer for that" at page 43, line 15. As indicated in the above block quote, a review of Ms. Olson's *complete* deposition testimony demonstrates that her views regarding the purported one-year representative period are entirely speculative.

This brings us to President Papettas. At deposition, he testified that he has no knowledge of the company's rationale for the one-year representative period:

11

> **Q.** You also sat in on Ms. Olson's deposition that was taken earlier today, correct?
> **A.** Yes.
> **Q.** Ms. Olson testified that when she came aboard in June of 2010 the determination had already been made that that one year representative period would apply to salespeople paid under the hourly versus commission plan. Do you remember hearing her give that testimony?
> **A.** Yes.
> **Q.** Do you have any knowledge as to who made that pre-2010 decision to utilize a one year representative period?
> **A.** I do not.
> **Q.** Do you have any knowledge of any deliberations since then to change that one year period to some other period?
> **A.** I do not.
> **Q.** Do you know – and be careful to not disclose attorney communications here – do you know why the company inserted language into its employee handbook pertaining to the one year representative period in 2020?
> **A.** I do not. I was not part of that decision.

Deposition of Bill Papettas ("Papettas Dep.") (Ex. 5) at 8:2-8:23.

In sum, Defendant fails to offer any trustworthy evidence for its conclusory assertion that the purported one-year representative period is somehow based on the "total characteristics" of salespersons' earning patterns. Indeed, the more one explores the factual record, the more obvious it becomes that the one-year representative period is nothing more than a *post-litigation rationalization* that lacks any support in the contemporaneous evidentiary record.

> **6. Even if Defendant is legally permitted to assert the retail commission exception, a reasonable jury could conclude that a six-month representative period is appropriate; such a finding could result in Plaintiff "seldomly" exceeding her guaranteed pay during at least two periods.**

As observed in Section A, "a commission rate is not *bona fide* if the formula for computing the commissions is such that the employee, in fact, always or almost always earns the same fixed amount of compensation for each workweek (as would be the case where the computed commissions seldom or never exceed the amount of the draw or guarantee)." 29 C.F.R. § 779.416(c). Defendant asserts that "***Plaintiff's commissions exceeded her guarantee***

***in 11 out of 68 pay periods – 16.7% of the time***, (*see* SMF ¶ 56), plainly more than 'seldom or never.'" Def. Br. (Doc. 22-1) at p.18 (emphasis in original). Defendant also identifies each of these 11 non-guarantee pay periods, *see* SUMD (ECF No. 22-2) at ¶ 50, and places them within one-year representative periods starting with the commencement of Plaintiff's employment, *see id.* at ¶ 56. This analysis results in: (i) 4 of 26 (15.4%) non-guaranteed pay periods falling within the 7/2/17-6/30/18 period; (ii) 3 of 26 (11.5%) non-guaranteed pay periods falling within the 7/1/18-6/29/19 period; and (iii) 4 of 16 (25%) non-guaranteed pay periods falling within the 6/30/19-termination period. *See id.*

Of course, Defendant's entire analysis is predicated on a one-year representative period. If, instead, a 6-month period were used, Plaintiff would have only ***1 of 13 (7.6%)*** non-guaranteed pay periods during both her initial 6-month period from 7/2/17 until 12/30/17 and her fourth 6-month period from 12/30/18 until 6/29/19. *See* SUMD (ECF No. 22-2) at ¶ 50. A reasonable jury could easily conclude that Plaintiff's receipt of non-guaranteed pay during only 7.6% of these pay periods qualifies as "seldom" under 29 C.F.R. § 779.416(c). Indeed, Defendant's own authority concludes that employees who exceeded their guaranteed payments 6%-10% of the time might fall within the "seldom" terminology. *See Gordon v. TBC Retail Group, Inc.*, 2020 WL 3259394, 2020 U.S. Dist. LEXIS 104512, *40-41 (D.S.C. June 16, 2020).

Considering that Defendant has offered no reliable evidence supporting the one-year representative period, *see* Section C.5 *supra*, it is quite possible that a jury or this Court could conclude that 6-months – not one-year – is an appropriate representative period. This is especially true considering the testimony of Mr. Varcos, the manager who hired Plaintiff:

> **Q.** What time period do you think does capture a person's commission experience given all of the ups and downs of the business?
> **MR. PLATT:** Object to the form. You can answer if you can.

13

> **A.** Well, based on the ups – basically ups and downs of the business. I mean we have certain times of year that are a lot busier than other times. ***You would need a good six to nine months.***

Varcos Dep. (Ex. 4) at 28:18-29:3; *see generally id.* at 25:18-29:3; *see also* Deposition of Gina Ramos (Ex. 6) at 35:12-38:24 (discussing the difficulty of determining an appropriate time-frame); Deposition of Eric Ciarrocci (Ex. 7) at 19:18-21:17 (same).

In sum, Defendant fails to present the Court with undisputed facts supporting its conclusory assertion that a one-year – rather than a six-month – representative period is appropriate with respect to Plaintiff's employment as a salesperson. And, if a six-month period is used, Plaintiff's whole analysis fails.

### 7. Even if Defendant is legally permitted to assert the retail commission exception and a one-year representative period is applied, a reasonable jury could conclude that Plaintiff "seldomly" exceeded her guaranteed pay.

As observed in the previous section, Defendant asserts that, during the course of Plaintiff's employment, she exceeded her guarantee in 11 out of 68 (or 16.7%) of her total pay periods, *see* Def. Br. (Doc. 22-1) at p.18, and, using a one-year representative period, the 11 pay periods break down as follows: (i) 4 of 26 (15.4%) non-guaranteed pay periods falling within the 7/2/17-6/30/18 period; (ii) 3 of 26 (11.5%) non-guaranteed pay periods falling within the 7/1/18-6/29/19 period; and (iii) 4 of 16 (25%) non-guaranteed pay periods falling within the 6/30/19-termination period, *see* SUMD (ECF No. 22-2) at ¶ 56.

But there is a big flaw in Defendant's analysis. Under the pertinent regulatory language, "a commission rate is not bona fide if the formula for computing the commissions is such that the employee, in fact, always or almost always earns the same fixed amount of compensation for each ***workweek*** (as would be the case where the computed commissions seldom or never exceed the amount of the draw or guarantee)." 29 C.F.R. § 779.416(c) (emphasis supplied); *see, e.g.*,

14

*Herman v. Suwannee Swifty Stores, Inc.*, 19 F. Supp. 2d 1365, 1372 (M.D. Ga. 1998) (performing § 779.416(c) analysis based on weeks). Contrary to this language, Defendant presents its analysis based on **two-week pay periods**. Moreover, Defendant admits that it "does not track compensation information on a weekly basis." Def. Interrog. Resp. (Ex. 3) at p. 2; *accord* Olson Dep. (Ex. 1) at 31:3-31:5.

In federal wage and hour litigation, it is fundamental that employees should not suffer for employer's inadequate record-keeping. *See generally Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047 (2016). Such is the case here. It is entirely possible – indeed, it is likely – that Plaintiff's commissions exceeded her guaranteed $13.50 hourly payments during only one of the two weeks constituting each of the 11 payroll periods identified by Defendant. If this is so – and Defendant cannot prove otherwise – Defendant's analysis self-destructs. Specifically: (i) the 4 of 26 (15.4%) non-guaranteed pay periods within the 7/2/17-6/30/18 period would become 4 of 52 (7.7%) workweeks and (ii) the 3 of 26 (11.5%) non-guaranteed pay periods falling within the 7/1/18-6/29/19 period would become 3 of 52 (5.76%) workweeks. A reasonable jury could easily find that 7.7% and 5.76% falls well within the "seldomly" terminology. *See Gordon*, 2020 U.S. Dist. LEXIS 104512, at *40-41.

Moreover, even if the Court were to accept Defendant's methodology of analyzing two-week pay periods, summary judgment would still be inappropriate because a reasonable jury could conclude that Plaintiff "seldomly" exceeded her guaranteed pay during the 7/1/18-6/29/19 period in which she exceeded her guaranteed pay during only 3 of 26 (11.5%) pay periods. Indeed, "seldom" means "in few instances," *Webster's Third New International Dictionary* (Unabridged 1993 Ed.) at 2058, and a reasonable person could conclude that 3 of 26 meets this definition. This is especially true where, as here, Defendant bears the burden of proof. *See*

15

Case 2:20-cv-00891-GJP   Document 23   Filed 11/09/20   Page 16 of 16

*Parker*, 620 F.3d at 277.  In fact, 11.5% is not too far off the 10% figure addressed in *Gordon supra*.  Such hair-splitting is not appropriate at the summary judgment stage.

In sum, the Court should not embark on the "seldomly" analysis because, as discussed in Sections C.1-5 *supra*, Defendant's violation of various rules preclude it from establishing a "*bona fide* commission rate."  However, even if such an analysis were conducted, summary judgment would not be warranted.

### D. Conclusion

For all the reasons discussed in this brief, Plaintiff asks the Court to deny Defendant's summary judgment motion.

Date:  November 9, 2020                                     Respectfully,

                                                            _____
                                                            Peter Winebrake
                                                            R. Andrew Santillo
                                                            Mark J. Gottesfeld
                                                            Winebrake & Santillo, LLC
                                                            715 Twining Road, Suite 211
                                                            Dresher, PA 19025
                                                            (215) 884-2491

                                                            *Plaintiff's Lawyers*

