IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIANE JOHNSON, ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED,<br><br>*Plaintiff*,<br><br>v.<br><br>MATTRESS WAREHOUSE, INC.,<br><br>*Defendant*. | CIVIL ACTION NO. 20-891 |

**DEFENDANT MATTRESS WAREHOUSE, INC.'S REPLY BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Dated: November 16, 2020

**SAUL EWING ARNSTEIN & LEHR LLP**

Henry A. Platt, Esq.
1919 Pennsylvania Ave., N.W., Suite 550
Washington, D.C. 20006
T: (202) 342-3447
Henry.Platt@saul.com

Jessica L. Meller, Esq.
1500 Market Street, Centre Sq. W., Fl. 38
Philadelphia, PA 19102
T: (215) 972-7104
Jessica.Meller@saul.com

*Attorneys for Defendant
Mattress Warehouse, Inc.*

## **INTRODUCTION**

In its opening Brief (ECF No. 22-1 ("Def. Brf.")), Defendant explained that the undisputed facts demonstrate: 1) Plaintiff was a commissioned sales employee of a retail establishment; 2) her regular rate of pay *always* exceeded one and one-half times the minimum wage for every hour she worked; and 3) more than half of her total earnings in a one-year representative period came from commissions on the retail sale of mattresses and related goods. Thus, Plaintiff was not entitled to overtime under the plain language of the FLSA and PMWA as a matter of law, because she satisfied the "Retail Sales Exemption." *See* 29 U.S.C. § 207(i); 34 Pa. Code § 231.43(f).

In her Opposition (ECF No. 23 ("Opp.")), Plaintiff has pointed to no *genuine* dispute as to *any* of the above facts. She outright admitted the first two points. *See* Def's Stmt. of Undisputed Material Facts (ECF No. 22-2 ("SMF")) ¶¶1-4 &17; Pl.'s Resp. to Def's Stmt. of Material Facts (ECF No. 24 ("Pl. SMF")) ¶¶1-4 & 17 ("Admitted"). And, most importantly, ***Plaintiff did not actually dispute that more than half of her total earnings in a one-year representative period came from commissions on the retail sale of mattresses and related goods***. *See* SMF ¶¶52-55, 57-58; Pl. SMF ¶¶52-55, 57-58 (while repeatedly asserting the irrelevant (and incorrect) point that "Plaintiff seldomly was paid more than her guaranteed hourly rate of $13.50," and that "Plaintiff was paid based on her $13.50 guaranteed pay on all but 11 pay periods," nevertheless providing ***absolutely no evidence (or in any way claiming) that Defendant's calculations and analysis regarding her compensation over various one-year representative periods are in any way factually incorrect***).

Instead, Plaintiff rests her *entire* Opposition on the theory that Defendant "cannot satisfy its burden of proof" that "Plaintiff was paid a '*bona fide* commission rate,'" Opp. at 1, based on "seven independent reasons." *Id.* Defendant addresses each of Plaintiff's arguments below, *seriatim.* As a preliminary matter, however, Defendant takes issue with Plaintiff's underlying premise regarding the burden of proof in this action.

Although Plaintiff correctly cites *Parker v. NutriSystem, Inc.*, 620 F.3d 274, 277 (3d Cir. 2010), for the proposition that Defendant bears the burden of proving the Retail Sales Exemption's applicability, *Parker*, in turn, cites to and relies upon the language in *Mitchell v. Ky. Fin. Co.*, 359 U.S. 290, 295-96 (1959), for this tenet, that states: "It is well settled that exemptions from the [FLSA] are to be narrowly construed." As Defendant pointed out on page 9 of its Brief, however, the Supreme Court has recently ***expressly*** rejected this principle. *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) ("Because the FLSA gives no 'textual indication' that its exemptions should be construed narrowly, 'there is no reason to give [them] anything other than a fair (rather than a "narrow") interpretation.'") (citation omitted). Accordingly, Defendant respectfully submits that neither *Mitchell* nor *Parker* remain good law on this point, and **the burden of proving that she does *not* fall within an express statutory exemption to the FLSA should remain at all times with the Plaintiff, as it is part and parcel of the statutory grant of the overtime "right" she claims**. *See id.* ("[T]he FLSA has over two dozen exemptions in § 213(b) alone, including the one at issue here. ***Those exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement***.") (citation omitted) (emphasis added). In this respect, it is noteworthy that the exemption at issue is found **in Section 7 *of the FLSA itself*** (which establishes the right to overtime), 29 U.S.C. §§ 207(a) & (i), as opposed to Section 13, which lists scores of *other* "exemptions." *See* 29 U.S.C. § 213.

Even if the Court were to decline to reach this issue, however, it is clear that summary judgment must nevertheless be granted in Defendant's favor, as the Retail Sales Exemption has been plainly satisfied in this action under a "fair" reading of the statutory exemption.

## ARGUMENT

### SUMMARY JUDGMENT MUST BE GRANTED, AS DEFENDANT COMPENSATED PLAINTIFF UNDER A *BONA FIDE* COMMISSION PLAN

In her Opposition, Plaintiff derisively refers to Defendant's commission compensation plan as a "scheme," Opp. at 3 & 4, because it utilizes a build to supplement earned commissions, in order

to ensure a guaranteed minimum payment in certain pay periods. As explained in detail in Defendant's opening Brief, however, there is no serious dispute that Defendant properly deemed Plaintiff to be overtime exempt under the plain language of Section 7(i) of the FLSA: "In determining the proportion of compensation representing commissions, *all* earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services ***without regard to whether the computed commissions exceed the draw or guarantee***." 29 U.S.C. §207(i) (emphasis added); *accord* 34 Pa. Code § 231.43(f) (same).

In this respect, Plaintiff does not in any way dispute that she was ***actually* compensated** under an ***actual* commission-based compensation plan**, under which she earned ***actual* commissions based on the type and amount of goods she *actually* sold**. She also does not dispute that the **payroll records Defendant has presented to the Court accurately reflect the *actual* commissions that she *actually* earned over the course of her employment**, or that more than half of her total earnings in a one year representative period came from sales commissions.

Instead, Plaintiff picks around the edges, arguing that there are "seven independent reasons" as to why Defendant cannot establish that Plaintiff was paid a "*bona fide* commission rate." These arguments all suffer from the same defect – they are based on hyper-technical, narrow interpretations of the FLSA regulations, notwithstanding the clear mandate of the Supreme Court in *Encino Motorcars* that the FLSA exemptions should be given a "fair," rather than "narrow," interpretation. 138 S. Ct. at 1142. The Court should reject them all, as they have nothing to do with the manner in which Plaintiff was *actually* compensated, with her express knowledge and consent.

**I.    Defendant Met the Statutory Requirements of the Retail Sales Exemption, Notwithstanding Any Alleged Technical Regulatory Record-Keeping Issues.**

Plaintiff's first two arguments are different variations of the same misguided theme – that Defendant cannot succeed on summary judgment under the Retail Sales Exemption because Plaintiff claims it failed to comply with the record-keeping requirements of 29 C.F.R. §779.417 and §516.16

– requirements that do not appear in the actual statute. *See* Opp. at 5-7 (Defendant failed to document the one-year "representative period"); *id.* at 7-8 ("Defendant failed to reach any agreement with Plaintiff concerning any representative period."). The exemption cannot be read so narrowly.

In paragraphs 25-33 of the SMF, citing to Plaintiff's own deposition testimony, Defendant detailed Plaintiff's actual understanding of Defendant's commission compensation plan. In response, Plaintiff ***admitted*** each and every one of these statements. *See* Pl. SMF ¶¶25-33. In addition, Defendant noted in SMF ¶13 that Plaintiff testified in her deposition that she "understood" the compensation plan – at the time of her initial interview with Defendant – and she never asked her supervisor any questions about it.

In response, Plaintiff disputes her ***own*** sworn testimony – through mere argument of counsel with no citations to any new testimony by Plaintiff – asserting that she did ***not*** actually "understand the compensation plan" because her hiring supervisor "did not make any reference to the representative period that would be used in determining Plaintiff's commissions." Pl.'s SMF ¶13. Of course, **the representative period is *not* used in "determining" commissions**; it is used to determine compliance with the Retail Sales Exemption – an issue Plaintiff apparently wasn't interested in asking her employer about. Nevertheless, Plaintiff ***admits*** that she actually reviewed and signed a written offer letter explaining how her compensation would be calculated each pay period. Pl. SMF ¶22. As set forth in the Olson Declaration, that agreement is maintained by the Company in its Human Resources files. *See* ECF No. 22-11 ¶¶5 & 7.

And while Defendant admittedly did not provide any formal written statements to its employees concerning its use of the one-year representative period until after Plaintiff left the Company, she has nevertheless produced absolutely no evidence to dispute the fact – established by the sworn, unrebutted testimony of both the Company's President and Corporate Manager of Human

4

Resources – that Defendant *actually* **uses a one-year period**, and has *actually* **used that period for purposes of establishing compliance with the FLSA,** *since at least 2010*. SMF ¶¶61-64.

Thus, Plaintiff argues that she was not an exempt commissioned sales employee because her employer never documented an agreement with her as to how it complied with the technical requirements of the FLSA. This is not the law. To the contrary, the courts have repeatedly held that failure to comply with the FLSA's technical record-keeping requirements does *not* disqualify the application of the Retail Sales Exemption where the statutory requirements have been satisfied. *See, e.g., Duarte v. Perez*, No. 6:14-cv-2077, 2016 WL 11566245, at *4–5 (M.D. Fla. Oct. 31, 2016) ("[C]ourts that have addressed this issue have concluded that recordkeeping flaws do not make the exemption unavailable to non-compliant employers, provided that they satisfy the statutory elements."), *report and rec. adopted*, 2016 WL 11566247 (M.D. Fla. Nov. 22, 2016); *Freixa v. Prestige Cruise Servs. LLC*, No. 15-22732-CIV, 2016 WL 5112202, at *3 (S.D. Fla. May 23, 2016) ("case law and federal guidance signal the retail sales exemption can still apply despite these recordkeeping flaws"); *Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*, 246 F. Supp. 2d 886, 899-900 (S.D. Ohio 2003) (record-keeping flaws not fatal to Retail Service Exemption); *see also, Gordon v. TBC Retail Grp., Inc.*, No. 2:14-CV-3365-DCN, 2020 WL 3259394, at *2, 10 (D.S.C. June 16, 2020) (**proof of one-year representative period** *came solely from declaration of Chief Human Resource Officer – not employer records*);

As the uncontroverted material facts demonstrate that Defendant complied with the **statutory requirements** of the Retail Sales Exemption, 29 U.S.C. §207(i), summary judgment must be granted given a fair reading of the exemption, notwithstanding any alleged technical regulatory record-keeping issues. Defendant also complied with the elements of the Retail Sales Exemption under 34 Pa. Code § 231.43(f), which mirrors 29 U.S.C. §207(i). Unlike the FLSA, however, the PMWA does

5

*not* have record-keeping regulations that mirror 29 C.F.R. §779.417 and §516.16. Thus, to the extent Plaintiff argues that her first two arguments apply to her PMWA claim, they do not.

**II.     Defendant Uses an Appropriate and Consistent Representative Period With Respect to Plaintiff, Individually.**

Plaintiff next argues that Defendant cannot establish a *bona fide* commission rate because it "failed to consider Plaintiff's individual circumstances in determining the representative period." Opp. at 8-9. Neither 29 U.S.C. §207(i) nor the FLSA regulations require that Defendant "consider Plaintiff's individual circumstances" in determining what representative period it chooses to apply under the Retail Sales Exemption. That phrase is not in the FLSA regulation, which contemplates that the employer select a period, *see* 29 C.F.R. §779.417(d), "which ***can reasonably be accepted*** by the employer, employee, and disinterested persons as being truly representative of the compensation aspects of the employee's employment on which this exemption test depends." 29 C.F.R. §779.417(a). "[T]he period selected and designated must be one which is representative with respect to the particular employee for whom exemption is sought[.]" C.F.R. §779.417(d). The appropriateness of the period depends on the employee's earning pattern. *Id*. It may be appropriate to use the same period for a group of employees of a retail establishment. *Id*.

Consistent with the FLSA regulations, Defendant uses a one-year representative period for ***all*** commissioned sales employees, because they ***all*** work through the same, repeating seasonal sales cycles. *See* SMF ¶¶60-64. Notwithstanding assorted "denials" in her responses, Plaintiff has not produced a scintilla of evidence disputing the Company's business judgment in this respect or, more importantly, Defendant's exhaustive calculations submitted with its Motion, establishing the appropriateness and consistency of its one-year representative period ***with respect to Plaintiff, individually***. *See* SMF ¶¶45-60; Pl. SMF ¶¶45-60. *See also* Def. Brf. 13-15 ("[D]espite the variability in Plaintiff's compensation over short periods of time, Plaintiff's ability to make sales and bring in commissions consistently evens out over the course of a year.").

### III. Plaintiff Has Waived Her Opportunity to Challenge Defendant's Discovery Responses.

Plaintiff next argues that Defendant has somehow "waived" its ability to explain why it uses a one-year representative period for all of its commissioned sales employees. *See* Opp. at 9-10. The argument is specious and disingenuous. As best as can be discerned, Plaintiff bases her argument on the fact that Defendant objected to overbroad interrogatories and document requests seeking *company*-wide sales and commission data, notwithstanding the Court's crystal-clear Order limiting fact discovery to "Plaintiff's claims and the purported company policies and practices applicable to her," and staying "all discovery related to the class/collective" until after the Court rules on any motion for summary judgment on Plaintiff's individual claims. ECF No. 17.

Plaintiff did not move to compel further responses, or, for that matter, take any issue with Defendant's objections at any time prior to her Opposition. Likewise, Plaintiff has failed to present an affidavit to the Court, **as required by Fed. R. Civ. P. 56(d)**, specifying why she needs additional discovery to present facts essential to justify her Opposition, if that is what she is indeed asserting. Accordingly, she has waived the right to raise these issues now.

Perhaps more important, however, is the fact that Plaintiff had a full and fair opportunity during discovery to question the Company's witnesses as to why it uses the one-year representative period – and actually did. *See* Opp. at 10-11 (complaining about – and quoting at length – the deposition testimony of the Defendant's President and Corporate Manager of Human Resources on these exact issues). She just didn't like the answers they gave.

### IV. Plaintiff's Failure to Ask Relevant Deposition Questions is Not a Basis to Deny Summary Judgment – Defendant's Leadership Provided Consistent Testimony Regarding Why Defendant Presently Utilizes a One-Year Representative Period.

In her fifth argument, Plaintiff argues that the Company's explanation for its ***continuing*** use of the one-year representative period is somehow not "trustworthy," because the individuals she deposed did not have personal knowledge why the decision to use that period was ***originally*** made

7

over 10 years ago, before they were employed by the Company. The argument is devoid of logic. In their sworn declarations, Defendant's President, Bill Papettas, and Corporate Manager of Human Resources and Payroll, Sandra Olson, explained why the Company *currently uses* a one-year representative period. *See* ECF No. 22-9 ¶¶14-15 (Papettas); ECF No. 22-11 ¶29 (Olson). These declarations are completely consistent with their deposition testimony, cited on pages 10-11 of the Opposition, in which they *truthfully* testified that they did not know why the Company *originally* chose the one-year period, because they were not employed by the Company at the time the decision was made. *See also* SMF ¶62 (citing the Papettas and Olson deposition testimony). The problem Plaintiff raises is *not* with the answers provided by the witnesses; the problem was with the questions. For unknown reasons, Plaintiff's counsel did *not* ask either Ms. Olson or Mr. Papettas why Defendant *currently* uses the one-year representative. Instead, counsel limited his questions to the *original, historical decision* to use that period. *See* Opp. at 10-12; ECF No. 23-1, Ex. 1, ¶¶41:18-43:7. Thus, when Plaintiff asked Ms. Olson about why Defendant may have *originally chosen* one year, she could only *speculate* based on her current understanding of why Defendant uses it *now*. ECF No. 23-1, Ex. 1, ¶¶41:18-43:7. Thus, Defendant's sworn declarations and testimony do not conflict.

**V.     Summary Judgment is Warranted Regardless of Whether a "Jury" Could Conclude that a Six-Month Representative Period – or Any Other Hypothetical Period – Might Be Appropriate.**

In her sixth argument as to why Defendant's commission payment plan is not "bona fide," Plaintiff merely argues that the results would be different if the Company chose to use a six-month representative period instead of a one-year representative period. *See* Opp. at 12-14. The argument is meaningless and irrelevant. Neither the FLSA nor its regulations require an employer to use the representative period most beneficial to the employee, one middle-managers might hypothetically find adequate (*see* Opp. at 13-14), or even the "best" period. Instead, the Act "plainly contemplates a period *which can reasonably be accepted* by the employer, the employee, and disinterested persons

as being truly representative of the compensation aspects of the employee's employment on which this exemption test depends." 29 C.F.R. §779.417(a) (emphasis added).

Here, Defendant has selected a one-year representative period. It has explained in detail why it continues to use this period for this purpose, why it is truly representative of the typical, repeating seasonal sales cycles of the Company's sales employees, and how it reveals consistent patterns with respect to Plaintiff's own compensation. Plaintiff, for her own part, has not submitted ***any*** evidence whatsoever that: 1) disputes these facts; 2) establishes that she does not believe that the period Defendant chose is reasonably representative; or 3) establishes that a disinterested third-party would find that the period Defendant chose is unrepresentative. Whether a "jury" could conclude that a six-month period – or another hypothetical period – might ***also*** be appropriate, or not, is simply irrelevant.

## VI. Defendant Properly Calculated and Paid Sales Employees Commissions on a Bi-weekly Basis, and Plaintiff's Hypothetical Alternative Calculations are Irrelevant Speculation.

Plaintiff's final argument is perhaps her most hyper-technical, based upon the narrowest of all possible readings of the Retail Sales Exemption. Specifically, she argues that Defendant may not use the exemption because it pays its commissioned sales employees on a *bi-weekly*, rather than *weekly*, basis, and therefore does not track commissions earned on a weekly basis. Plaintiff claims this "inadequate record-keeping" voids the exemption. *See* Opp. at 14-15. This is untrue.

As a preliminary matter, neither the FLSA nor the PMWA prohibits an employer from paying employees every two weeks. To the contrary, the controlling Pennsylvania Wage Payment and Collection Law expressly permits it. 43 P.S. §§251 & 253. More importantly, however, with respect to giving the required "fair" reading to the FLSA exemption, the FLSA regulations ***expressly*** state that employers are ***not*** required to maintain wage records on a per "workweek" basis for employees under the Retail Sales Exemption, as Plaintiff claims. *See* 29 C.F.R. §516.16 ("[P]ursuant to . . . section 7(i), employers shall maintain and preserve payroll and other records containing all . . . data required by §516.2(a) ***except paragraphs (a) (6), (8)***...") (emphasis added). Paragraphs (a)(6) and (8)

9

of §516.2 require employers to maintain weekly records, among other things. 29 C.F.R. §516.2(a)(6) & (8). Instead, the regulations expressly provide that such employers may maintain records that show "[t]otal compensation paid to each employee *each pay period* (showing separately the amount of commissions and the amount of noncommission straight-time earnings)." 29 C.F.R. §516.16(c) (emphasis added). **This is exactly what Defendant does**. *See* ECF No. 22-11, Ex. E (earning statements showing required data for each pay period). As Defendant fully complied with the regulatory requirements in this respect, Plaintiff's argument fails, and her speculation about what the data *might* theoretically show if Defendant paid its commissioned sales employees on a weekly basis, *see* Opp. at 15, is meaningless and irrelevant.

Finally, Plaintiff's musings about how a "reasonable jury" might theoretically interpret the language in the regulatory hypothetical using the phrase "seldom or never" is likewise irrelevant, as it is **the Court's duty** to interpret that statutory and regulatory language, ***not*** a jury's role. Court's undertake this analysis at the summary judgment stage routinely. *See, e.g., Gordon*, 2020 WL 3259394, at *10 ("Under the now required fair reading standard established in *Encino Motorcars, LLC*, the court interprets these holdings to stand for the proposition that if an employee exceeds the guarantee in wages more than 10% of time, that employee has a wage that exceeds the amount of the draw or guarantee more often than seldom.").

## CONCLUSION

For all of the reasons set forth in Defendant's motion and this reply, Mattress Warehouse respectfully requests that summary judgment be entered in its favor and the entire case be dismissed.

                                       Respectfully submitted:

                            **SAUL EWING ARNSTEIN & LEHR LLP**

Dated: November 16, 2020        By: */s/ Henry A. Platt*
                                             Henry A. Platt, Esq. (*Admitted Pro Hac Vice*)
                                             1919 Pennsylvania Ave., N.W., Suite 550
                                           Washington, D.C. 20006
                                           T: (202) 342-3447
                                           Henry.Platt@saul.com

                                           Jessica L. Meller, Esq.
                                           1500 Market Street, Centre Sq. W., Fl. 38
                                           Philadelphia, PA 19102
                                           T: (215) 972-7104
                                           Jessica.Meller@saul.com

                                           *Attorneys for Defendant*
                                           *Mattress Warehouse, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing **DEFENDANT MATTRESS WAREHOUSE INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** was served upon the following via the Court's ECF system:

Peter D. Winebrake, Esq.
R. Andrew Santillo
Mark J. Gottesfeld
Winebrake & Santillo, LLC
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025

*Counsel for Plaintiff*

Date:  November 16, 2020                    */s/  Henry A. Platt*
                                                                    Henry A. Platt