**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DIANE JOHNSON, ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED, *Plaintiff,* v. MATTRESS WAREHOUSE, INC., *Defendant.* | CIVIL ACTION NO. 20-891 |

**DEFENDANT MATTRESS WAREHOUSE, INC.'S SUPPLEMENTAL BRIEF**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Dated: August 13, 2021

**SAUL EWING ARNSTEIN & LEHR LLP**

Henry A. Platt, Esq.
1919 Pennsylvania Ave., N.W., Suite 550
Washington, D.C. 20006
(202) 342-3447
Henry.Platt@saul.com

Carolyn A. Pellegrini, Esq.
1500 Market Street, Centre Sq. W., Fl. 38
Philadelphia, PA 19102
 (215) 972-7121
Carolyn.Pellegrini@saul.com

*Attorneys for Defendant*
*Mattress Warehouse, Inc.*

**INTRODUCTION**

Defendant Mattress Warehouse, Inc. submits this Supplemental Brief in Support of its Motion for Summary Judgment (ECF No. 22 ("Motion")), pursuant to the Court's Order dated August 3, 2021 (ECF No. 29 ("Order")). In its Order, the Court instructed the parties to file supplemental briefs 1) "addressing the appropriate weight and deference to be given to the relevant Department of Labor regulations," and 2) if they so choose, supplementing "their arguments about which party bears the burden of proof to establish the elements of the FLSA and PMWA exemptions for commissioned retailed sales employees (i.e., the 'representative period' and whether Johnson's commission was 'bona fide')."

As to the first issue, Defendant submits that the relevant DOL regulations, as set forth in 29 C.F.R. pt. 779, are non-binding on the Court (and Defendant) and entitled to minimal, if any, *Skidmore* deference. As explained in detail below, based upon several recent Supreme Court cases, this is not even a close call. Regarding the second issue, Defendant submits that Plaintiff bears the ultimate burden of proving that she is entitled to overtime pay pursuant to Section 7(a)(1) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), as expressly limited on its face by Section 7(i) of the FLSA, 29 U.S.C. § 207(i). That burden, by necessity, includes establishing that: 1) she was *not* a commissioned sales employee of a retail establishment; 2) her regular rate of pay did *not* exceed one and one-half times the minimum wage for every hour she worked; or 3) more than half of her total earnings in the one-year representative period did *not* come from bona fide commissions on the retail sale of mattresses and related goods.

## ARGUMENT

I. **THE DEPARTMENT OF LABOR'S NON-BINDING INTERPRETIVE RULES ARE ENTITLED TO MINIMAL, IF ANY, *SKIDMORE* DEFERENCE**

    A. **The DOL Regulations Are Non-Binding Interpretive Rules**

There are, essentially, two distinct types of administrative rules: legislative and interpretive. The former has the force and effect of law, whereas the latter does not and is not binding on the Court. *See Perez v. Mortgage Bankers Assn.*, 575 U.S. 92, 97 (2015) ("Interpretive rules 'do not have the force and effect of law and are not accorded that weight in the adjudicatory process.'") (quoting *Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 99 (1995)); *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2055 (2019) (citing *Perez,* 575 U.S. at 96-97); *Kisor v. Wilkie*, 139 S. Ct. 2400, 2420 (2019) ("In *Mortgage Bankers*, we held that interpretive rules … do *not* have the force of law.") (emphasis in original) (citing *Perez,* 575 U.S. at 103-04 & n.4); *Kisor*, 139 S. Ct. at 2420 ("A key feature of [interpretive] rules is that (unlike legislative rules) they are not supposed to 'have the force and effect of law' – or, otherwise said, to bind private parties.").

As this Court recently explained:

> "Legislative rules, which have the force of law, impose new duties upon the regulated party. Interpretive rules, on the other hand, seek only to interpret language already in properly issued regulations." *Pennsylvania Dep't of Human Servs v. United States*, 897 F.3d 497, 505 (3d Cir. 2018) (internal quotation marks and citations omitted). "[T]he hallmark of legislative rules" is "[e]xpanding the footprint of a regulation by imposing new requirements, rather than simply interpreting the legal norms Congress or the agency itself has previously created[.]" *Iowa League of Cities v. EPA*, 711 F.3d 844, 873 (8th Cir. 2013). "***Interpretive rules do not add language to or amend language in the statute, but simply state what the administrative agency thinks the statute means, and only remind affected parties of existing duties.***" *Pennsylvania Dep't of Human Servs*, 897 F.3d at 505 (internal quotation marks and citations omitted).

*Robert W. Mauthe, M.D., P.C. v. Millennium Health LLC*, No. 18-1903, 2020 WL 2793954, at *15 (E.D. Pa. May 29, 2020) (emphasis added). *See also Perez,* 575 U.S. at 96-97 ("[T]he critical feature of interpretive rules is that they are 'issued by an agency to advise the public of the agency's

construction of the statutes and rules which it administers.'") (quoting *Shalala*, 514 U.S. at 99); *Kisor*, 139 S. Ct. at 2420 ("[I]nterpretive rules are meant only to 'advise the public' of how the agency understands, and is likely to apply, its binding statutes and legislative rules.").

The key distinction between legislative and interpretive rules rests upon the manner in which they are implemented. Typically, a legislative rule must undergo extensive notice-and-comment procedures under Section 4 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, whereas interpretive rules do not. *See Perez,* 575 U.S. at 95-97; *Kisor*, 139 S. Ct. at 2420 ("Section 553 … mandates that an agency use notice-and-comment procedures before issuing legislative rules. But the section allows agencies to issue 'interpret[ive]' rules without notice and comment.") (internal citations omitted); *Robert W. Mauthe,* 2020 WL 2793954, at *15 (explaining process).

In this case, there can be no question that the DOL's rules concerning the application of the FLSA to the retail industry, as set forth in 29 CFR pt. 779, and, more specifically for purposes of the Motion, the rules relating to the application of Section 7(i) of the FLSA, 29 U.S.C. § 207(i), as set forth in 29 CFR §§ 779.410 through 779.421, are *interpretive* regulations. Consequently, they lack the force and effect of law and the ability to bind private parties, such as Defendant Mattress Warehouse. *See Kisor*, 139 S. Ct. at 2420.

Most significantly, the Department of Labor itself has *repeatedly* expressly stated that these rules are *intended* to be interpretive. The retail commission sales limitation on the overtime requirements of Section 7(a) was first added to the statute as part of the Fair Labor Standards Amendments of 1961, Pub. L. 87-30, §6(g), 75 Stat. 65, 70 (1961). Shortly thereafter, the DOL issued its first regulations interpreting this new provision, without notice and comment. *See* 26 Fed. Reg. 8,333 (Sept. 2, 1961). In so doing, the DOL expressly stated:

> Part 779 of Title 29 of the Code of Federal Regulations is hereby revised in the manner indicated below in order to adapt it to the Fair Labor Standards Amendments of 1961 (Public Law 87-30). ***As this revision is concerned solely with interpretative rules, neither public procedure nor delay in the effective date is required by the***

3

>> ***Administrative Procedure Ac****t*, and it will become effective September 3, 1961, the
>> effective date of the 1961 amendments.

*Id.* (emphasis added).

The retail commission sales provision was again amended by the Fair Labor Standards
Amendments of 1966, Public Law 89-601, § 402, 80 Stat. 830 (1966) (adding the final sentence of
§7(i)). Once again, the DOL promulgated regulations, *expressly* stating that they were intended to be
merely interpretive:

>> The administrative procedure provisions of 5 U.S.C. 553 which require notice of
>> proposed rule making, opportunity for public participation, and delay in effective date
>> ***are not applicable because these are interpretative rules****.* I do not believe such
>> procedures will serve a useful purpose here. Accordingly, this amendment revising
>> Part 779 shall become effective immediately.

35 Fed. Reg. 5,856 (Apr. 9, 1970) (emphasis added). *See also* 85 Fed. Reg. 29,867 (May 19, 2020)
("***Because part 779 is an interpretive rule***, the provision in the [APA] requiring publication of a
notice of proposed rulemaking does not apply. *See* 5 U.S.C. 553(b).") (emphasis added).

The current regulations cite the 1970 amendments as their source. Calling the regulations an
"Interpretive Bulletin," the DOL sets forth its "Purpose" in 29 C.F.R. § 779.0:

>> It is the purpose of this part to provide an official statement of the views of the
>> Department of Labor with respect to the application and meaning of those provisions
>> of the [FLSA], which govern rights and obligations of employees and employers in
>> the various enterprises in which retail sales of goods or services are made... It is an
>> objective of this part to make available in one place, for the guidance of those who
>> may be concerned with the provisions of the law, the official interpretations of these
>> provisions by which the Department of Labor will be guided in carrying out its
>> responsibilities under the Act.

*See also* 29 C.F.R. § 779.410 ("There are briefly set forth in §§ 779.411 to 779.421 *some guiding
principles* for determining whether an employee's employment and compensation meet the conditions
set forth in section 7(i).") (emphasis added).

Lest there be any doubt, the Supreme Court expressly held in *Encino Motorcars, LLC v.
Navarro*, 136 S. Ct. 2117, 2122 (2016) ("*Encino Motorcars I*"), that the regulatory definitions, set

4

forth in 29 C.F.R. § 779.372(c) by virtue of the 1970 regulations, were "intended" by the DOL to be "*a mere interpretive rule explaining its own views, rather than a legislative rule with the force and effect of law.*" *Id.* at 2122 (emphasis added) (citing 35 Fed. Reg. 5,856); *accord Leal v. Magic Touch Up, Inc.,* – Fed. Appx. – , 2021 WL 1522475, at *4 (5th Cir. April 16, 2021) (describing the DOL regulation concerning the meaning of a "bona fide commission rate" set forth in 29 C.F.R. § 779.416(c) as "a nonbinding regulation interpreting the term by providing two negative examples.").

There is thus absolutely no question that the regulations set forth in 29 C.F.R. pt. 779 are merely non-binding, interpretive rules that do *not* carry the force and effect of law. *Perez,* 575 U.S. at 96-97; *PDR Network,* 139 S. Ct. at 2055; *Kisor,* 139 S. Ct. at 2420. Accordingly, *the regulations* cannot be "violated" by Mattress Warehouse, as Plaintiff repeatedly argued in her summary judgment opposition brief and at the hearing. *See, e.g.,* Tr. at 116:23-117:7 ("[I]f a company has not implemented the representative period in the way contemplated by the regulations, it is a per se violation… [I]t violates the regulations, in Plaintiff's view."); Plaintiff's Mem. in Opp. to Summary Judgment (ECF No. 23) at 6 ("Defendant has violated clear FLSA regulations by failing to maintain any documents addressing the purported one-year representative period."); *id.* at 7 ("Here again, Defendant fails to comply with clear regulatory mandates."); *id.* at 8 ("Defendant violated the above rule"); *id.* at 16 ("Defendant's violation of various rules preclude it from establishing a 'bona fide commission rate.'"). Likewise, as noted by counsel for Defendant at the hearing, there is no private right of action to enforce the FLSA's recordkeeping requirements; that power lies solely with the Secretary of Labor. *See Lopez v. Tri-State Drywall, Inc.,* 861 F. Supp. 2d 533 (E.D. Pa. 2012).

## B. The Court May apply *Skidmore* Deference to the DOL Interpretive Rules, to the Extent it Finds them to be Persuasive

Interpretive rules are *not* entitled to deference by the Court under *Chevron. See Parker v. NutriSystem, Inc.*, 620 F.3d 274, 278 (3d Cir. 2010) ("Interpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all

of which lack the force of law – do not warrant *Chevron*-style deference.") (quoting *Christensen v. Harris County*, 529 U.S. 576, 587 (2000)); *Pennsylvania v. DeJoy*, 490 F. Supp. 3d 833, 878 (E.D. Pa. 2020). Rather, such "interpretations" are "'entitled to respect' based on an agency interpretation's power to persuade." *Parker*, 620 F.3d at 278 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

When interpreting a statute, the Court always begins with the text. If the statute's text is unambiguous, the Court's "inquiry ceases." *DOL v. Bristol Excavating, Inc.*, 935 F.3d 122, 130 (3d Cir. 2019) (citing *Matal v. Tam*, 137 S. Ct. 1744, 1756 (2017)); *Egan v. Delaware River Port Auth.*, 851 F.3d 263, 270 (3d Cir. 2017) ("If the statute's language is clear and unambiguous, we uphold the plain meaning of the statute.") (citation omitted); *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 295 (3d Cir. 2012) ("We conduct this ambiguity analysis as a matter of statutory interpretation which is necessarily antecedent to our deference inquiry because we need reach the deference question only if we find the statutory language is ambiguous.") (citation omitted).

Mattress Warehouse submits that there is absolutely nothing ambiguous about the term "bona fide commission rate" set forth in Section 7(i) of the FLSA, and the Court should simply invoke its plain meaning. Here, unlike in *Parker*, 620 F.3d at 678, there is no confusion over whether the *method* of payment constitutes a "commission." Likewise, the question is not whether the payments were "really" commissions directly based on sales uncoupled from hours worked, and Plaintiff does not *actually* dispute that more than half of her total earnings in a one-year representative period came from actual commissions on the retail sale of mattresses and related goods. *See* SMF ¶¶52-55, 57-58; Pl. SMF ¶¶52-55, 57-58.

The issue is the meaning of "bona fide," which the Court does not need the Department of Labor to define. "Bona fide" means "Made in good faith; without fraud or deceit." *Bona fide*, BLACK'S LAW DICTIONARY (11th ed. 2019). *See, e.g., Leal,* 2021 WL 1522475, at \*5 (adopting

and applying the Black's Law Dictionary definition of "bona fide" while interpreting FLSA Section 7(i)). Here, there are simply no allegations that the commission rates themselves earned by Plaintiff were fraudulent or deceitful in any way, or that the commission plan was not implemented, administered, or applied in good faith. Rather, Plaintiff just doesn't like the representative period chosen by Mattress Warehouse for the analysis. *But see* DOL "Fact Sheet #20: Employees Paid Commissions By Retail Establishments Who Are Exempt Under Section 7(i) From Overtime Under The FLSA," https://www.dol.gov/agencies/whd/fact-sheets/20-flsa-commissions-retail (last viewed August 13, 2021) (interpretive guidance making clear that "*the employer must select* a representative period" in order to determine if the conditions have been met, i.e., *not* the employee.).

Nevertheless, to the extent that the Court believes the term lacks clarity, it may look to the DOL's interpretation based on the agency's "power to persuade." *Parker*, 620 F.3d at 278 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) ("We consider the thoroughness evident in [the interpretation's] consideration, the validity of [the interpretation's] reasoning, [the interpretation's] consistency with earlier and later pronouncements, and all those factors which give [the interpretation] power to persuade, if lacking power to control."); *Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246, 253 (3d Cir. 2005)). *See also Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012) (same) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001)). *See generally Hagans*, 694 F.3d at 294-95 (providing detailed overview of *Skidmore* deference).

As Mattress Warehouse has repeatedly argued, there is no actual dispute that it paid Plaintiff properly in accordance with the plain language of the statute itself. Plaintiff's argument is that Mattress Warehouse did not comply with the statute because, in her view, it failed to fully comply with the *additional* requirements imposed upon Defendant by the regulations. As noted above, interpretive rules may not "add language to or amend language in the statute," they can only "state what the administrative agency thinks the statute means, and only remind affected parties of existing

duties." *Pennsylvania Dep't of Human Servs.*, 897 F.3d at 505. They also do not "bind" private parties, such as Defendant, at all. *Kisor*, 139 S. Ct. at 2420. Accordingly, to the extent the DOL regulations can be read to impose additional obligations upon Defendant that are beyond the requirements of the Act itself, they are void and unworthy of any deference from the Court whatsoever. *See, e.g., Parker*, 620 F.3d at 283 (refusing to apply even *Skidmore* deference to DOL "opinion letters and broad general guidance" concerning the definition of "commissions" under §7(i)).

## II.   PLAINTIFF SHOULD BEAR THE ULTIMATE BURDEN OF PROVING THAT SHE IS QUALIFIED TO RECEIVE OVERTIME, WHICH INCLUDES PROVING THAT SHE IS NOT SUBJECT TO THE SECTION 7(i) LIMITATIONS.

As set forth on pages 1-2 of Defendant's Summary Judgment Reply (ECF No. 5), in light of the Supreme Court's recent admonition that courts should give the FLSA exemptions a "fair," rather than "narrow," reading, *Encino Motorcars, LLC v. Navarro,* 138 S. Ct. 1134, 1142 (2018) ("*Encino Motorcars II*"), it is Defendant's position that Plaintiff should bear the initial burden of proving her eligibility for overtime under the FLSA, including the inapplicability of Section 7(i) of the Act, as part of her *prima facie* case.

Defendant has located no decisions holding that a plaintiff bears this burden with respect to Section 7(i), and observes that existing cases have assumed the contrary (without much analysis), including the Third Circuit. *See, e.g., Parker*, 620 F.3d at 277. Nevertheless, Defendant submits, in good faith, that this is the clear and logical result of a "fair" reading of the FLSA itself, when considered as a whole. As the Supreme Court reasoned in *Encino Motorcars II*, "the FLSA has over two dozen exemptions in § 213(b) alone. *Those exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement*." 138 S. Ct. at 1142 (citation omitted) (emphasis added). So is § 7(i).

When interpreting the Act, the Court must consider the "design and structure of the statute as a whole." *University of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 353 (2013) (citation

omitted). "Just as Congress' choice of words is presumed to be deliberate, so too are its structural choices." *Id.* (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177, n.3 (2009)). In *Nassar*, the Court held that the "text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim … must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer," *id.* at 362, notwithstanding that the discrimination provision of the Act only required a "mixed-motive" analysis. The Court based its analysis on the fact that Congress amended the discrimination standard as part of the Civil Rights Act of 1991, whereas it did not make the same revision to the retaliation provision in that Act, "thereby reinforcing the conclusion that Congress acted deliberately when it omitted retaliation claims" from the revised standard. *Id.* at 353-54. *See also Gross*, 557 U.S. at 177 n.3 ("We must give effect to Congress' choice.").

The analysis is the same here. The retail commission sales "exemption" was added to *Section 7* by the 1961 Amendments, notwithstanding that virtually all other *"exemptions"* were set forth in *Section 13*, 29 U.S.C. § 213. In fact, the 1961 statute actually amended § 13 *extensively*, but Congress chose not to include commissioned employees in that section. *See* Pub. L. 87-30, § 9, 75 Stat. 65, 70. The Court "must give effect to Congress's choice." Moreover, § 7(a)(1) of the Act itself – the provision creating the entitlement to overtime – begins with the phrase: "***Except as otherwise provided in this section…***" 29 U.S.C. § 207(a)(1) (emphasis added). "[T]his section" plainly refers to § 7 as a whole – which by definition *includes* § 7(i), 29 U.S.C. § 207(i). Therefore, the right to overtime *does not exist* without compliance with § 7(i). This is the only "fair" reading of the exemption.

Thus, fairly read, just as a Plaintiff bears the initial burden of establishing that she is an "employee," she actually worked more than 40 hours in a workweek, and that her employer failed to pay overtime for that period, all within the meaning of Section 7(a)(1), the Plaintiff should bear the burden of establishing that: 1) she was *not* a commissioned sales employee of a retail establishment;

9

2) her regular rate of pay did *not* exceed one and one-half times the minimum wage for every hour she worked; or 3) more than half of her total earnings in the one-year representative period did *not* come from bona fide commissions on the retail sale of mattresses and related goods, in order to even qualify for overtime pay under the Act.

Respectfully submitted:                    **SAUL EWING ARNSTEIN & LEHR LLP**

Dated: August 13, 2021                    By: */s/ Henry A. Platt*
                                                 Henry A. Platt, Esq. (*Admitted Pro Hac Vice*)
                                                 1919 Pennsylvania Ave., N.W., Suite 550
                                                 Washington, D.C. 20006
                                                 (202) 342-3447
                                                 Henry.Platt@saul.com

                                                 Carolyn A. Pellegrini, Esq.
                                                 1500 Market Street, Centre Sq. W., Fl. 38
                                                 Philadelphia, PA 19102
                                                 (215) 972-7121
                                                 Carolyn.Pellegrini@saul.com

                                                 *Attorneys for Defendant*
                                                 *Mattress Warehouse, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing **DEFENDANT MATTRESS WAREHOUSE INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** was served upon the following via the Court's ECF system:

Peter D. Winebrake, Esq.
R. Andrew Santillo
Mark J. Gottesfeld
Winebrake & Santillo, LLC
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025

*Counsel for Plaintiff*

Date:  August 13, 2021                          */s/  Henry A. Platt*
                                                                    Henry A. Platt