### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIANE JOHNSON ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED,<br><center>*Plaintiff,*</center><br><center>v.</center><br><br>MATTRESS WAREHOUSE, INC.,<br><center>*Defendant.*</center> | CIVIL ACTION<br>NO. 20-891 |

**PAPPERT, J.**                                         **September 15, 2021**

### MEMORANDUM

Diane Johnson alleges that Mattress Warehouse, Inc., in violation of the Fair Labor Standards Act and the Pennsylvania Minimum Wage Act, has not paid her or other similarly situated employees for overtime work. After discovery limited to Johnson's individual claims[1], Mattress Warehouse moves for summary judgment, arguing she was subject to FLSA and PMWA exemptions for commissioned retail sales employees and thus not entitled to overtime pay. After a thorough review of the record, including the parties' filings (ECF 22-25), oral argument on the motion (ECF 30) and post-argument supplemental briefs (ECF 32-33), the Court grants Mattress Warehouse's motion.

<center>I</center>

Johnson had eighteen years of sales experience when she applied for a Mattress Warehouse job selling mattresses and related accessories. (Def.'s Stmt. of Undisputed

---

[1]      Pursuant to the parties' agreement, the Court stayed discovery related to the putative class/collective and tolled the running of the statute of limitations applicable to the FLSA claims of all putative collective members until after a ruling on any motion for summary judgment on Johnson's individual claims. (*See* ECF 17, ¶ 4.)

Facts, ECF 22-2, ¶¶ 4, 20.)  Peter Varcos, Mattress Warehouse's Regional Sales
Manager for Eastern Pennsylvania, interviewed Johnson and verbally offered her a job.
(*Id.* ¶¶ 6, 15.)  He told her she could "expect to work from open to close five days per
week, including on weekends . . . ." (*Id.* ¶ 15.)  "[H]er compensation would be from
commissions" on sales of mattresses, accessories and mattress delivery services.  (*Id.*
¶ 6.)  Varcos explained that as a commissioned retail sales associate she would be
ineligible for overtime pay if she worked more than forty hours in a workweek, but "she
would never earn less than $13.50 per hour for every hour she worked . . . ." (*Id.* ¶¶ 9.)
If, during any two-week pay period, her commissions resulted in pay which was less
than the equivalent of $13.50 per hour for the hours she had worked, Mattress
Warehouse would make up the difference – i.e., the "build" or "build up" – with a pay
adjustment.  (*Id.* ¶¶ 9-10.)  Commissioned salespersons' ADP earning statements note
the dollar amount of any build beside the amount of commissions.  (*Id.* ¶ 10.)  Varcos
told Johnson she would not have to reimburse Mattress Warehouse for any build
payments included in her compensation out of future commissions earned.  (*Id.* ¶ 12.)

Johnson does not recall asking Varcos any questions during her interview about
how she would be paid and testified she understood how the compensation plan worked.
(Def.'s Mot., Ex. B (Ex. 1, Johnson Dep.), ECF 22-4 at 24:6-9; 27:1-6.)  She knew she
would be working five days a week "from open to close," i.e. from 8:00 or 9:00 in the
morning until 6:00 in the evening on Sundays, 8:00 on Saturdays and 9:00 on weekdays
with no overtime pay if she worked over 40 hours.  (*Id.* at 25:19-26:3; 26:16-20; 31:15-
17.)  Johnson could earn more than $13.50 an hour if her combined commissions and
bonus incentives earned during a given pay period resulted in a higher rate of pay.  (*Id.*

at 31:18-23.)  She was given a choice of two stores where she could work after two weeks of training elsewhere and opted to be based in Phoenixville, Pennsylvania.  (*Id.* at 24:18-25:9.)

Johnson received a written offer for a "Sales Professional" position memorializing the terms of Varcos' verbal offer.  (Def.'s Stmt. of Undisputed Facts, ECF 22-2, ¶ 16.)  The offer letter explained she would "be paid on a bi-weekly basis" with a $13.50 base hourly rate "(*no* overtime wages), *or* combined commissions & bonus incentives earned during any given pay period, whichever amount (hourly rate or combined commission & bonus is greater . . . ."  (Def.'s Mot., Ex. D (Varcos Decl., Ex.  B (offer letter) (emphasis in original)), ECF 22-10 at ECF p. 12.)  The letter explained that her compensation would "be administered in accordance with Mattress Warehouse's policies and procedures" and the policies could "change from time to time, without notice, during the course of [her] employment."  (*Id.*)  At the time she accepted the offer, Johnson understood the terms of her compensation arrangement.  (Def.'s Mot., Ex. B (Ex. 1, Johnson Dep.), ECF 22-4 at 34:2-5.)  She signed the offer letter on June 26, 2017 and worked for Mattress Warehouse until February 2020.  (Def.'s Stmt. of Undisputed Facts, ECF 22-2, ¶¶ 22, 24.)

Johnson regularly worked over 50 hours per week and, during some weeks, worked over 60 hours.  (*See* Def.'s Mot., Ex. E (Olson Decl. Ex. D (Timecards)), ECF 22-11, ECF p. 87-128.)  Her pay fluctuated across pay periods.  During one two-week pay period, she earned only $202.54 in commissions.  (Def.'s Stmt. of Undisputed Facts, ECF 22-2, ¶ 49.)  With a supplemental build payment from Mattress Warehouse, she grossed $1,374.34 for the pay period.  (*Id.*)  During another two-week pay period, she

earned over $3,000 in gross pay:  $2,775.90 in commissions plus $403.62 in bonuses. (*Id.* ¶ 48.)  In 2018, Johnson's annual gross pay was $39,947.79.  (*Id.* ¶ 47.)  In 2019, her annual gross pay was $41,482.86.  (*Id.*)

Johnson was paid more than the guaranteed $13.50 an hour for eleven of her sixty-eight two-week pay periods as a Mattress Warehouse employee.  (*Id.* ¶ 50.) Between July 2, 2017 and June 30, 2018, she received pay with no "build" (or commission-only pay) for four of twenty-six pay periods.  (*Id.* ¶ 56.)  Between July 1, 2018 and June 29, 2019, she received pay with no "build" for three of the twenty-six pay periods.  (*Id.*)  Between June 30, 2019 and February 2020, Johnson worked sixteen pay periods for Mattress Warehouse and was paid with no "build" four times.  (*Id.*)

Looking at her pay over the course of a calendar year, she was paid straight commissions in five of twenty-six pay periods in both 2018 and 2019.  (*Id.* ¶ 59.)  Using a sixth-month timeframe, Johnson earned more than the $13.50 hourly guarantee twice:  once between July 2, 2017 and December 30, 2017 and once between December 30, 2018 and June 29, 2019. (Pl.'s Opp'n Mem., ECF 23 at 13.)

## II

Summary judgment is proper if the movant proves that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is "material" if it may affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  A mere scintilla of evidence supporting the nonmoving party, however, will not suffice.  *Id.* at 252.  Rather, the nonmovant must

"set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256.

Where a defendant moves for summary judgment based on an affirmative defense, it would bear the burden of proof at trial and must "show that it has produced enough evidence to support the findings of fact necessary to win" on summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 237 (3d Cir. 2007); *see also Hena v. Vandegrift*, No. 18-762, 2020 WL 1158640, at *30 (W.D. Pa. Mar. 10, 2020) ("To be entitled to summary judgment on an affirmative defense, the defendant must show that based upon the undisputed facts of evidence, a reasonable jury could find only in its favor with respect to the affirmative defense.") (citation omitted).  Nevertheless, the nonmoving party "cannot simply rely on the mere possibility that a jury would find the [movant's] evidence insufficient." *United States v. Donovan*, 661 F.3d 174, 188 (3d Cir. 2011); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (affirming summary judgment for the defendant on affirmative defense where nothing in the record rebutted the defendant's expert evidence).  "A reasonable juror will be compelled to find for the moving party unless there are reasonable – not fanciful or illusory – concerns with the moving party's evidence. *El*, 479 F.3d at 238 n.7.

At summary judgment, a court may consider any material in the record that may be admissible at trial.  *See* Fed. R. Civ. P. 56(c); *Pamintuan v. Nanticoke Memorial Hosp.*, 192 F.3d 378, 387-88 & n.13 (3d Cir. 1999).  In doing so, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009).  But it need not credit "[u]nsupported assertions, conclusory allegations, or mere suspicions." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).  Nor may a court make

credibility determinations or weigh the evidence.  *See Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016).

III

Congress enacted the FLSA to correct and eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers . . . ." 29 U.S.C. § 202.  It concluded that such conditions create unfair competition, lead to labor disputes, burden commerce and the free flow of goods and interfere with orderly and fair marketing of goods.  *Id*. The Act requires employers to pay employees overtime at one and one-half times their regular rate of pay for hours worked beyond forty hours in a week.  29 U.S.C. § 207(a). But some commissioned retail employees are exempt from the overtime requirement. FLSA Section 7(i) relieves employers of the overtime requirement for retail employees if (1) their "regular rate of pay" is "in excess of one and one-half times the [applicable] minimum hourly rate," and (2) "more than half" of their  "compensation for a representative period (not less than one month) represents commissions on goods . . . ." 29 U.S.C. § 207(i).  When determining what proportion of compensation consists of commissions, "all earnings resulting from the application of a bona fide commission rate shall be deemed commissions . . . without regard to whether the computed commissions exceed the draw or guarantee."  *Id*.

The Court gives the retail commission and other FLSA exemptions a "fair reading" as the Act's text gives no indication "that [they] should be construed narrowly . . . ."  *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (U.S. 2018) (citing A. Scalia & B. Garner, Reading Law 363 (2012)).  It does so with "a fair

understanding of the legislative plan," *King v. Burwell*, 576 U.S. 473, 498 (2015), using "textual and structural clues . . . ." *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074, 201 L. Ed. 2d 490 (2018).  "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992).  "Until and unless someone points to evidence suggesting otherwise, affected individuals and courts alike are entitled to assume statutory terms bear their ordinary meaning." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1481–82, 209 L. Ed. 2d 433 (2021); *see also Bond v. United States*, 572 U.S. 844, 861 (2014) ("In settling on a fair reading of a statute, it is not unusual to consider the ordinary meaning of a defined term . . . .").

The overtime "exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement." *Encino*, 138 S. Ct. at 1142.  "The commission exception is one of those statutory exceptions to the general overtime rule adopted as part of the galaxy of compromises essential to passage." *Reed v. Brex, Inc.*, 8 F.4th 569, ---, No. 20-1697, 2021 WL 3486661, at *6 (7th Cir. 2021).  A fair reading "neither narrow nor broad . . . is as should be expected, because employees' rights are not the only ones at issue and, in fact, are not always separate from and at odds with their employers' interests." *Sec'y United States Dep't of Lab. v. Bristol Excavating, Inc.*, 935 F.3d 122, 135 (3d Cir. 2019). The Court cannot expand the retail commission exemption beyond what its terms permit and it "cannot arbitrarily constrict it either by adding limitations found nowhere in its terms." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366, 204 L. Ed. 2d 742 (2019).

A

As a "general rule," FLSA exemptions are affirmative defenses for which the employer bears the burden of proof. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *see also Parker v. NutriSystem, Inc.*, 620 F.3d 274, 277 (3d Cir. 2010) ("The employer has the burden of demonstrating that it is eligible for the retail commission exception."). Nevertheless, Mattress Warehouse argues that if the FLSA is "fairly read," Johnson bears the burden of establishing she is not subject to an overtime exemption. (Def.'s Supplemental Br., ECF 33 at 8.) At oral argument, Mattress Warehouse's counsel contended the retail commission exemption is "not an affirmative defense" for which it would bear the burden of proof. (Aug. 3, 2021 Oral Arg. Trans., ECF 30 at 7:9-10.) However, the Company concedes it has "located no decisions holding that a plaintiff bears this burden with respect to Section 7(i) . . . ." (Def.'s Supplemental Br., ECF 33 at 8.) The Third Circuit has not deviated from this general rule since *Encino Motorcars*, and no district court in this Circuit has found the decision shifted the burden of establishing any FLSA exemption from an employer to an employee. *See Clews v. Cnty. of Schuylkill*, No. 20-2216, --- F.4th ----, 2021 WL 3852624, at *3 (3d Cir. Aug. 30, 2021) (citing the general rule in *Corning Glass*).

The Fifth Circuit recently recognized that FLSA exemptions are given "a fair reading, not a narrow one," but still held "the burden of establishing an exemption remains with the employer, who must do so by a preponderance of the evidence." *Hobbs v. EVO Inc.*, 7 F.4th 241, ---, 2021 WL 3161821, at *3 (5th Cir. 2021) (citations and internal quotation omitted). The Eleventh Circuit did the same. *Ramirez v. Statewide Harvesting & Hauling, LLC*, 997 F.3d 1356, 1359 (11th Cir. 2021) ("The

employer bears the burden of establishing that an employee is exempt."). And the Court is unaware of any district court that has shifted the burden of proving FLSA exemptions from employers to employees since *Encino Motorcars*.[2]

Mattress Warehouse maintains the burden of establishing eligibility for FLSA's Section 7(i) exemption is different from the burden for establishing the Act's Section 213(b) exemptions. (Def.'s Supplemental Br., ECF 33 at 8-9.) In its view, Johnson has no right to overtime unless she can show she meets each of Section 7's requirements because Section 7(a)(1) – the provision creating an entitlement to overtime pay – begins with the phrase "[e]xcept as otherwise provided in this section . . . ." *(Id.* at 9 (citing 29 U.S.C. § 207(a)(1)).) It argues a right to overtime does not exist without compliance with Section 7(i), so if the FLSA is "fairly read," to receive overtime, Johnson must show

> 1) she was *not* a commissioned sales employee of a retail establishment;
> 2) her regular rate of pay did *not* exceed one and one-half times the minimum wage for every hour she worked; or 3) more than half of her total

---

[2]     *See Quinn v. City of Eaton, Ohio*, No. 19-241, 2021 WL 1312587, at *2 (Apr. 8, 2021) ("The burden of proof for the employer is to establish each element of the exemption by a preponderance of the evidence."); *Quartararo v. J. Kings Food Serv. Pros., Inc.*, No. 17-7390, 2021 WL 1209716, at *8 (E.D.N.Y. Mar. 31, 2021) ("Defendants bear the burden of proving that the . . . exemption applies."); *Patal v. Marquez Constr. & Maint.*, No. 19-281, 2021 WL 1436693, at *3 (W.D. Tx. Mar. 2, 2021) ("If the employer claims that the suing employee is exempt from the overtime requirement, then the employer has the burden of proving that the employee falls within the claimed exempted category.") (citation and internal quotation omitted); *Latham v. High Mesa Commc'ns*, No. 17-CV-02118-JLK-GPG, 2020 WL 1626976, at *1 (D. Colo. Feb. 7, 2020) ("[N]otwithstanding *Encino*, the employer still has the burden of showing the exemption applies."); *Carrera v. EMD Sales, Inc.*, 402 F. Supp. 3d 128, 146 (D. Md. 2019) ("[N]othing in the *Encino* decision relates to evidentiary burdens . . . ."); *Wilson v. Schlumberger Tech. Corp.*, No. 17-00281, 2019 WL 1916200, *2 (D. Colo. April 24, 2019) (acknowledging "the employer's burden is somewhat relaxed" following *Encino* but confirming the employer "bears the burden to prove that plaintiffs fall within the [ ] exemption"); *McKinnon v. City of Merced*, No. 18-1124, 2018 WL 6601900, at *3 (E.D. Cal. Dec. 17, 2018) (same); *Flores v. City of San Gabriel*, No. 12-4884, 2018 WL 8017788, at *3 n.1 ("[A]fter *Encino*, the assertion of overtime exemptions remains an affirmative defense and the employer still carries the burden of establishing that it qualifies for an exemption."); *Hurt v. Commerce Energy, Inc.*, No. 12-758, 2018 WL 4203531, at *1 (N.D. Ohio, Sep. 4, 2018) (explaining it "would still be Defendants' burden" to show the plaintiffs met FLSA's "outside sales" exemption under *Encino Motorcars'* required "fair reading").

earnings in the one-year representative period [(which Mattress Warehouse elected)] did *not* come from bona fide commissions on the retail sale of mattresses and related goods . . . .

(*Id.* at 10 (emphasis in original).)

To interpret Section 7(i) as Mattress Warehouse requests would require the Court to read words into the statute – the italicized "nots" – that are not there. This would not be a "fair reading" and Mattress Warehouse bears the burden of proving it is exempt from paying Johnson overtime under Section 7(i).

<p style="text-align:center">B</p>

Mattress Warehouse contends in any event that it has shown the retail commission exemption applies to Johnson. There is no dispute she was employed at a retail sales establishment. (Def.'s Stmt. of Undisputed Facts, ECF 22-2, ¶¶ 2-3; Pl.'s Resp. to Def.'s Undisputed Facts, ECF 24, ¶¶ 2-3.) And Johnson concedes Mattress Warehouse guaranteed her a minimum of $13.50 per hour for every hour she worked, more than one and one-half times the state and federal minimum wage of $7.25 per hour.[3] (Pl.'s Opp'n Mem., ECF 23 at 3; *see also* Def.'s Mot. Br., ECF 22-1 at 11; Def.'s Mot., Ex. E (Olson Decl. Ex. D (Paystubs)), ECF 22-11, ECF p. 129-197.)

The Company's motion turns on two terms the FLSA does not define: "representative period" and "bona fide commission." Specifically, Mattress Warehouse argues the undisputed material facts show Johnson is subject to the retail commission exemption because "more than 50%" of her pay for the Company's one-year representative period was for bona fide commissions. (Def.'s Mot. Br., ECF 22-1 at 11-

---

[3]     At the time of Johnson's employment, the statutory federal minimum wage, 29 U.S.C. § 206(a)(1)(c) (as effective June 30, 2016), and the Pennsylvania statutory minimum wage, 43 P.S. § 333.104(a.1) (as effective July 5, 2012) were $7.25 per hour.

20.)  Johnson contends disputed facts remain as to whether the Company appropriately used a one-year representative period to determine its compliance with the retail commission exemption.  (Pl.'s Opp'n Mem., ECF 23 at 5-14.)  Even if it could do so, she maintains a reasonable jury could conclude her commissions were not bona fide because her earnings seldom exceeded her guaranteed pay.  (*Id.*)

Giving the retail commission exemption the "fair reading" that *Encino Motorcars* requires, the Court considers the relevant terms' "ordinary, contemporary, common meaning" to decide whether Mattress Warehouse has met its burden.  *Food Mktg. Inst.*, 139 S. Ct. at 2363 (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)); *see also Munoz-Gonzalez v. D.L.C. Limousine Serv., Inc.*, 904 F.3d 208, 215-16 (2d Cir. 2018) (explaining *Encino Motorcars* requires a court to 'interpret each FLSA exemption the same way [it] would any other statutory provision – with full attention to its text"). When words are not statutorily defined, the Court may look "to dictionary definitions to determine the[ir] ordinary meaning . . . ."  *United States v. Andrews*, No. 20-2768, 2021 WL 3852617, at *3 (3d Cir. Aug. 30, 2021) (quoting *Bonkowski v. Oberg Indus., Inc.*, 787 F.3d 190, 200 (3d Cir. 2015).  The Court may also consider a statutory policy statement if it "shed[s] a reliable light on the enacting Legislature's understanding of [an] otherwise ambiguous term[ ]."  *Id.* (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) (alterations in original)).

In addition, the Department of Labor's FLSA regulations provide interpretive guidance which "may merit some deference" because of the agency's specialized experience, its access to broader investigations and information and because of "the value of uniformity in its administrative and judicial understandings of what a national

law requires . . . ." *United States v. Mead Corp.*, 533 U.S. 218, 234 (2001) (citation and internal quotation omitted).  Agency interpretations are "entitled to respect" based on their "power to persuade."  *Parker*, 620 F.3d at 278.  Nevertheless, courts make "[t]he ultimate decisions on interpretations of the [FLSA] . . . ."  29 C.F.R. § 779.8; *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) ("[T]he rulings, interpretations and opinions of the [agency], while not controlling upon the courts by reason of their authority, do constitute a body of experience for informed judgment to which courts and litigants may properly resort for guidance" if they have persuasive force.).

i

Mattress Warehouse appropriately used a one-year representative period to determine whether more than half of Johnson's compensation was for commissions earned on the retail sale of mattresses and related accessories.  29 U.S.C. § 207(i). Definitions of "representative" at the time of the retail commission exemption's 1961 addition to the FLSA include "serving to represent, portray or typify," "serving as a characteristic example," "illustrative of a class," or "typical."  *Representative*, Webster's Third New International Dictionary of the English Language Unabridged at 1926 (1963); *see also* Fair Labor Standards Amendments of 1961, Pub. L. 87-30, 75 Stat. 65. In line with the dictionary definitions, the FLSA's regulations contemplate a representative period that is "as recent a period" – of not less than one month – "to fully and fairly reflect all such factors, as can practicably be used."  29 C.F.R. §§ 779.417(b) & (c).  It "should be long enough to stabilize the measure of the balance between the portions of the employee's compensation which respectively represent commissions and other earnings, against purely seasonal or plainly temporary changes."  *Id.* § 779.417(c).

A representative period should "reasonably be accepted . . . as being truly representative of the compensation aspects of the employee's employment" and should be "a period which typifies the total characteristics of an employee's earning pattern . . . with respect to the fluctuations of the proportion of his commission earnings to his total compensation." *Id.* § 779.417(a).

<div align="center">a</div>

The Company has used a one-year representative period to determine its compliance with the retail commission exemption "since at least 2010" and maintains there is "no evidence that a one-year period could, would, or should not be reasonably accepted" as "truly representative." (Def.'s Mot. Br., ECF 22-1 at 12-13.) Varcos testified that the business had "ups and downs," with "certain times of year that are a lot busier than other times." (Pl's Opp'n Mem., Ex. 4 (Varcos Dep.), ECF 23-1 at ECF p. 51-52 (28:23-29:2).) In his view as a regional sales manager, "a good six to nine months" would be needed to adequately capture a salesperson's commission experience. (*Id.* at ECF p. 51-52 (28:18-29:3).) Shorter periods would not suffice. (*Id.* at ECF p. 51 (28:8-17).) Mattress Warehouse's President, Bill Papettas, submitted a sworn declaration in compliance with Federal Rule of Civil Procedure 56(c)(4) stating that "a one-year period reasonably captures all of the variances in the repeating sales cycle" including "the different holidays throughout the year (with attendant sales) . . . ." (Def.'s Mot., Ex. C (Papettas Decl.), ECF 22-9, ¶ 15.) Papettas also explained that "one year best typifies the total characteristics of a commissioned sales associate's earning pattern at Mattress Warehouse with respect to fluctuations of the proportion of commission earnings to total compensation that all commissioned sales associates

<div align="center">13</div>

encounter." (*Id.* at ¶ 14.)

Human Resources Manager Sandra Olson's sworn declaration includes the same explanation. (Def.'s Mot., Ex. E (Olson Decl.), ECF 22-11, ¶ 29.) At her deposition, she theorized that the Company had chosen one year because of "the cycle that the sales go through, the holidays, the summer months" and testified the choice made sense to her "as the snapshot because of all the variances throughout the year." (Pl's Opp'n Mem., Ex. 1 (Olson Dep.), ECF 23-1 at ECF p. 13 (42:24-43:7).) In other words, Mattress Warehouse believes one year provides a "characteristic example" of a commissioned employee's earnings because it accounts for "seasonal" or "temporary" changes in compensation from fluctuating sales over time. *See* 29 C.F.R. § 779.417(c).

Johnson believes Mattress Warehouse not shown that one year is representative of the "total characteristics" of its salespersons' earning patterns. (Pl.'s Opp'n Mem., ECF 23 at 10-12.) She points out that Pappetas did not know how the Company originally decided to use a one-year representative period. (Pl's Opp'n Mem., Ex. 5 (Papettas Dep.), ECF 23-1 at ECF p. 55 (8:9-16.) Likewise, Olson testified she could only guess as to "the absolute rationale behind" Mattress Warehouse's use of one year. (Pl's Opp'n Mem., Ex. 1 (Olson Dep.), ECF 23-1 at ECF p. 13 (42:3-15).) But it is not Mattress Warehouse's burden to show why it initially selected a one-year period; it only has to demonstrate that a one-year period is representative. The record evidence does that.

Johnson merely suggests a six-month period might also be "representative." (Pl.'s Opp'n Mem., ECF 23 at 12-14.) Yet her counsel acknowledged Varcos's testimony that it would take "a good six to nine months" to evaluate a salesperson's performance

did not mean an alternative timeframe would be better or more "representative" than the Company's one-year period.  (Aug. 3, 2021 Oral Arg. Trans., ECF 30 at 96:18-97:8.) Even if it were, an available alternative period that provides a characteristic example of her earnings patterns does not mean Mattress Warehouse got it wrong.  Mattress Warehouse does not have to show its chosen representative period is the best or only possible timeframe – only that it is typical of Johnson's earnings.

<div align="center">b</div>

Johnson also faults Mattress Warehouse for not adhering to the Department of Labor's regulatory requirements.  ((Pl.'s Opp'n Mem., ECF 23 at 5-9.)  She argues the regulations required Mattress Warehouse to reach an individualized agreement with her as to the appropriate representative period.  (*Id*. at 7-8; *see also* (Aug. 3, 2021 Oral Arg. Trans., ECF 30 at 62:15-18 ("[T]he Department . . . does require that the employer reach an agreement with the employee as to the length of the representative period."); *id*. at 72:15-16 ("[T]he reg[ulation]s require it and the reg[ulations]s are law".).  Mattress Warehouse, however, was not statutorily required to have written agreements with overtime exempt salespeople where each "employee manifests his or her agreement with the utilization of the one year representative period."  (Pl's Opp'n Mem., ECF 23, Ex. 1 (Olson Dep.), ECF 23-1 at ECF p. 15 (49:12-17).).  Johnson's counsel conceded this at oral argument.  (Aug. 3, 2021 Oral Arg. Trans., ECF 30 at 72:13-15.)  Even the regulations do not mandate a documented meeting of the minds between an employer and its employees as to the representative period to be used before an employee begins work.  Instead, the regulations require use of "a period which *can* reasonably be accepted by the employer, the employee, and disinterested persons as

<div align="center">15</div>

being truly representative of the compensation aspects of the employee's employment on which this exemption test depends."  29 C.F.R. § 779.417(a) (emphasis added).

The regulations do require employers to designate and substantiate an "appropriate" representative period or a formula for establishing one.  29 C.F.R. § 779.417(d).  They also direct employers to maintain and preserve "[a] copy of the agreement or understanding under which section 7(i) is utilized or, if such agreement or understanding is not in writing, a memorandum summarizing its terms including . . . the applicable representative period . . . ."  *Id.* § 516.16(b).

Mattress Warehouse admittedly did not comply with these regulatory provisions. (*See* Pl.'s Opp'n Mem., ECF 23 at 5-8; Def.'s Reply, ECF 25 at 4.)  Johnson's offer letter makes no mention of any representative period.  (Def.'s Mot., Ex. E (Olson Decl., Ex. B), ECF 22-10 at 11-14.)  The Company's decision to use the one-year representative period was "not documented."  (Pl's Opp'n Mem., Ex. 1 (Olson Dep.), ECF 23-1 at ECF p. 13 (43:16-44:4.)  Asked whether the Company provided overtime-exempt salespeople "any type of explanation of the one year representative period," Olson testified that it was "in the handbook."  (*Id.* at ECF p. 14-15 (48:22-49:3.)  Although the one-year representative period has "always been a business practice," the handbook language "was added after Ms. Johnson" in 2020, and Olson was not aware of any written materials addressing the one-year period provided to salespeople before then.  (*Id.* at ECF p. 27 (59:16-60:16).)

At oral argument, Johnson's counsel maintained the Company's alleged failure to implement a representative period in the way contemplated by the regulations gives rise to "a per se violation."  (Aug. 3, 2021 Oral Arg. Trans., ECF 30 at 116:23-117:1.)

Nevertheless, he conceded he had no authority for such an assertion.  (*Id.* at 117:2-7.)

Indeed, "recordkeeping flaws do not make the exemption unavailable to non-compliant

employers, provided that they satisfy the statutory elements."  *Duarte v. Perez*, No. 14-

2077, 2016 WL 11566245, ay *4-5 (M.D. Fla. Oct. 31, 2016), report and recommendation

adopted 2016 WL 11566247 (M.D. Fla. Nov. 22, 2016); *see also Pittman v. McClain's

R.V., Inc.*, No. 12-542, 2013 WL 12139092, at *10 (Jun. 12, 2013) ("[T]here is no private

cause of action for violation of the FLSA's recordkeeping requirements.").  The

regulations "themselves do not make clear" that employers who do not keep appropriate

records cannot invoke the retail commission exemption.  *Clyde v My Buddy Plumber

Heating and Air, LLC*, No. 19-756, 2021 WL 778533, at *6 (D. Utah Mar. 1, 2021).

While the "failure to comply with the regulations' recordkeeping requirements may give

rise to an evidentiary problem," it does not prevent application of the exemption.  *Clyde*,

2021 WL 778533, at *6.

There is no evidentiary problem here.  The record shows Mattress Warehouse's

one-year period is "representative" under the term's ordinary meaning and there is no

genuine issue for trial on this point.

ii

Johnson's commissions were also bona fide.  *See Parker*, 620 F.3d at 278 ("[I]n

order to be a commission, the fee paid to the employee must be based on a 'bona fide

commission rate.'") (quoting 29 U.S.C. § 207(i)).  The contemporary dictionary definition

of a commission is "a fee paid to an . . . employee for transacting a piece of business or

performing a service" or "a percentage of the money received in a sale . . . paid to the

agent responsible for the business."  *Commission*, Webster's Third New International

Dictionary of the English Language Unabridged at 457 (1963). Something which is "bona fide" is "made in good faith without fraud or deceit," "made with earnest or wholehearted intent," or "genuine." *Bona fide*, Webster's Third New International Dictionary of the English Language Unabridged at 250 (1963). *Cf. Erichs v. Venator Grp., Inc.*, 128 F. Supp. 2d 1255, 1259 (N.D. Cal. 2001) ("The inquiry is whether the employer set the commission rate in good faith."). The Department of Labor regulations also provide some "guideposts." *Spicer v. Pier Sixty LLC*, 269 F.RD. 321, 333 (S.D.N.Y. 2010) (citation and quotation omitted). They suggest a commission is not bona fide when an employee "always or almost always earns the same fixed amount of compensation for each workweek (as would be the case where the computed commissions seldom or never equal or exceed the amount of the draw or guarantee)." 29 C.F.R. § 779.416(c). A commission plan can still be bona fide even though in some workweeks "the amount of commissions may not equal or exceed [a] guarantee or draw . . . ." 29 C.F.R. § 779.416(b). "[E]mployers may smooth the peaks and valleys of a commission-based payment model, without losing application of the bona fide commission exception, by providing employees with 'periodic payments, which are described variously in retail or service establishments as advances, draws, or guarantees.'" *Reed*, 2021 WL 3486661, at *8 (quoting 29 C.F.R. § 779.416(a) (further internal quotation marks omitted)).

Weighing whether a commission plan was bona fide in *Parker*, the Third Circuit considered: (1) whether the commission was a percentage or proportion of the ultimate price passed on to the consumer; (2) whether commissions were "decoupled from the actual time worked," providing an incentive for employees to work more efficiently and

effectively, and (3) whether it offended the overtime rules' intended purposes – to protect "lower-income type employees" from working "abnormally long hours," to reduce unemployment by spreading work among more workers, and to protect workers from the risk of fatigue-related workplace accidents.  620 F.3d 274, 283-84 (3d Cir. 2010). The first two *Parker* factors are consistent with the plain language of the statutory exemption, fairly read, as they go to the question of whether Johnson was paid a "genuine" commission.  Mattress Warehouse suggests *Parker's* third factor is no longer viable after *Encino Motorcars*, which rejected the narrow-construction principle as "rely[ing] on the flawed premise that the FLSA pursues its remedial purpose at all costs." (Def.'s Mot. Br., ECF 22-1 at 15 (citing *Encino Motorcars*, 138 S. Ct. at 1142 (internal quotations omitted).)  Whether or not it is does not matter here.  There are no material questions of fact that Johnson's compensation plan was made in good faith – i.e., without fraud or deceit, as a fair reading of the statute requires.

Varcos explained how the Company's commission payments worked (Def.'s Stmt. of Undisputed Facts, ECF 22-2, ¶¶ 9, 12) and Johnson understood the system.  (Def.'s Mot., Ex. B (Ex. 1, Johnson Dep.), ECF 22-4 at 27:1-6.)  Her commissions were based on the prices of the items she sold.  (Def.'s Stmt. of Undisputed Facts, ECF 22-2, ¶ 25.) The amount of her commissions was not tied to the hours she worked and she had an incentive to sell items eligible for higher commissions to increase her compensation. (*Id.* ¶¶ 25-29.)  That she was guaranteed a $13.50 hourly rate does not mean her commission payments were not bona fide.  *See Crawford v. Saks & Co.*, No. 14-3665, 2016 WL 3090781, at *4 (S.D. Tex. June 2, 2016) ("[T]hat a plan pays a guaranteed minimum does not prevent it from being a bona fide commission plan.") "[T]he statutory

text . . . implicitly but plainly permits a 'draw or guarantee.'" *Reed*, 2021 WL 3486661, at *7 (citing 29 U.S.C. § 207(i)).

Johnson argues the Company cannot claim the retail commission exemption because "a reasonable jury could conclude [she] 'seldomly' exceeded her guaranteed pay" between July 1, 2018 and June 29, 2019, when "she exceeded her guaranteed pay during only 3 of 26 (11.5%) pay periods." (Pl.'s Opp'n Mem., ECF 23 at 15.)  But under the "fair reading" *Encino Motorcars* requires, "if an employee exceeds the guarantee in wages more than 10% of the time, that employee has a wage that exceeds the amount of the draw or guarantee more often than seldom." *Gordon v. TBC Retail Grp., Inc.*, No. 14-3365, 2020 WL 3259394 (D.S.C. Jun. 16, 2020).  *Cf. Herman v. Suwannee Swifty Stores, Inc.*, 19 F. Supp. 2d 1365, 1372 (M.D. Ga. 1998) (finding a commission plan was not bona fide where an employee exceeded "the guaranteed rate only once in a year and the amount of the commissions only marginally increase[d] the[ir] annual earnings," but declining to hold that exceeding the guarantee 10% of the time or less was "seldom" as a matter of law).

IV

Like the FLSA, the PMWA requires employers to pay overtime at one and one-half times an employee's regular rate of pay for hours worked beyond forty in a week. 43 P.S. § 333.104(c).  The PMWA states that the Pennsylvania Secretary of Labor and Industry will promulgate regulations regarding the overtime pay mandate. *Id.*; *see also* 34 Pa. Code § 231.41.  Under those regulations, certain employees are exempt from overtime pay requirements. *See* 34 Pa. Code § 231.43.  A provision parallel to FLSA Section 207(i) provides that employers need not pay retail employees for overtime if:  (1)

20

their "regular rate of pay . . . is in excess of 1 ½ times the minimum hourly rate applicable[; and] (2) [m]ore than half of the employee's compensation for a representative period, not less than 1 month, represents commissions on goods . . . ." 34 Pa. Code § 231.43(f).  "In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee."  *Id.* § 231.43(f)(2).  The PMWA does not define "representative period," "commission" or "bona fide" and neither do its regulations.  *See* 43 P.S. § 333.103; 34 Pa. Code § 231.43(f).

The PMWA and FLSA retail commission exemptions are nearly identical.  In *Commonwealth Department of Labor and Industry v. Stuber*, the Pennsylvania Commonwealth Court found it was proper "to give deference to federal interpretation" of the FLSA when the PMWA "substantially parallels it."  822 A.2d 870, 873 (Pa. Commw. Ct. 2003), aff'd sub nom. *Commw. v. Stuber,* 859 A.2d 1253 (Pa. 2004).  Thus, in *Livi v. Hyatt*, the Third Circuit's interpretation of a state exemption "worded nearly identically" to its federal counterpart was "informed by case law interpreting the parallel FLSA exemption."  751 F. App'x 208, 210 (3d Cir. 2018); *see also Bansept v. G&M Auto.*, 434 F. Supp. 3d 253, 258 (E.D. Pa. 2020) ("Because of the similarities between the PMWA and the FLSA, Pennsylvania courts analyze overtime and minimum wage violations of the PMWA and the FLSA under the same framework.").  The Pennsylvania Supreme Court recently held that "the federal FLSA merely provides a minimum floor for the protection of workers' wages . . ." and the PMWA "provides more expansive protection."  *In re Amazon.com, Inc.*, No. 43 EAP 2019, 2021 WL

3059773, at *5 (Pa. July 21, 2021).  It explained that it has not always "follow[ed] the interpretation of similarly applicable provisions of the Federal FLSA" because the Act does not preclude "more generous protections provided by a state . . . ."  *Id.* at *7. Nevertheless, the Court reaffirmed that "[w]hen 'interpreting an administrative regulation, as in interpreting a statute, the plain language of the regulation is paramount.'"  *Id.* at *10 (quoting *Schappell v. Motorists Mut. Ins. Co.*, 934 A.2d 1184, 1187 (Pa. 2007).

The plain language of the PMWA and its regulations evince no intention to set a higher bar than the FLSA for application of the retail commission exemption.  Because the Court's determination of Johnson's FLSA claim rests on an interpretation of the plain language of its retail commission exemption, there is no reason to reach a different outcome with respect to Mattress Warehouse's motion for summary judgment on her PMWA claim.

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

22